Duke v Balme et al.

AARON N. DUKE

*vs.*

JOSHUA R. BALME AND WIFE

A. sold land to B. October 30th, 1856, taking three land warrants from him in part payment, relying upon B.'s representations that he was the owner thereof. The warrants were genuine, but the assignments thereof were forged, in consequence whereof A. acquired no title in the warrants by the transaction.

Duke v. Balme et al.

Both parties were ignorant of the fact that said assignments were forged, and believed that they were genuine, and there was no intention on B.'s part to deceive or defraud A., who discovered that the assignments were forged as to two, in 1861; as to the third in 1863. *Held*, that that part of the purchase money, in payment whereof said warrants were so taken, remained in fact unpaid, and that A. had an equitable lien therefor on the land.

Prior to said purchase, B.'s wife had lent and advanced to him a sum of money, of her separate property, upon the agreement that B might invest the same in lands, or otherwise, and be the owner of such lands or other purchases in his own name, but when requested, was to account to his wife for the said loan, and transfer to her the funds, or any land purchased with them. Said warrants were purchased with a part of said money by B. for himself, and as his property. Subsequently to said purchase, said lands were conveyed by B. to his wife, at her request, to apply on said loan, at an agreed valuation. *Held*, that B.'s wife was not a purchaser for value within the rule that the equitable lien of the vendor for unpaid purchase money will not be enforced against a *bona fide* purchaser, for value, without notice.

In November, 1858, B. departed from the state, his wife in August, 1862. From December, 1858, to September, 1868, B. resided out of the state; his wife from August, 1862, to September, 1868. This action was commenced as early as October, 1868. *Held*, not barred by the statute of limitations.

This action was commenced in the district court for Washington county, and was tried before a referee. The material facts, as found by the referee, are substantially as follows: On the 30th day of October, 1856, the plaintiff sold and conveyed to the defendant Joshua R. Balme, certain lands in said county, then owned by him, and in part payment therefor received from Balme three land warrants, at an agreed price, which Balme said and represented to the plaintiff that he owned, and the plaintiff received them relying upon such representation. These land warrants were genuine, but the assignments endorsed on them were forged. Both Balme and Duke were ignorant

Duke v. Balme et al.

of this fact, and there was no intention on the part of Balme to deceive or defraud the plaintiff. The plaintiff first discovered that the assignments on two of these warrants were forged in 1861, and on the other in 1863, and the defendants first heard and had notice thereof in October, 1868.

Prior to this purchase the defendant Margaret Balme, wife of the defendant Joshua R., had loaned and advanced to him a considerable sum of money, from her separate estate, upon the agreement that the said Joshua R. "might invest the same in lands, or otherwise, and be the owner of such lands, or other purchases, in his own name, but when requested was to account to her for the said loan, and transfer to her the funds received, or any lands purchased with them." These land warrants were purchased with a portion of this money, and the said lands were conveyed by the said Balme to his wife, at her request, to be applied at an agreed valuation on said loan or advance.

In November, 1858, the defendant Balme left Minnesota for Europe, and his wife left in August, 1862. Neither returned until about October, 1868. Since the latter part of October, 1868, both have been residents of this state. It does not appear from the paper book when this action was commenced.

The referee found, among other things, as a conclusion of law, that the plaintiff was entitled to a lien upon said lands for the amount for which the warrants were received by the plaintiff, with interest, and directed judgment to be entered accordingly. Judgment was entered upon the report of the referee, and the defendants appeal therefrom to this court.

Lampreys for Appellants

W. P. Warner for Respondent.

Duke v. Balme et al.

*By the Court*—Ripley, Ch. J.—The referee finds that Balme said and represented to Duke, that he was the owner of the land warrants taken from him by the latter, in part payment of the purchase price of his land. This we think was an express warranty of title.

The warrants were genuine, but did not belong to Balme, the assignments thereof being forgeries. Duke consequently acquired no property in them by such transaction, and as to said part of the purchase price of his land, he received nothing. It was in fact unpaid, though he supposed he had been paid, an erroneous belief, into which he had been led by the vendor's warranty.

When the purchase money is not paid, the vendor has an equitable lien therefor, on the land sold. In this case, it has not been paid. Is the lien gone, because the vendor supposed it had been paid, relying upon the assurances of the vendee, in that behalf, upon which he had a right to rely? We think not.

We have, it is true, been unable to find any case presenting the precise state of facts arising here. In *Bradley vs. Bosley*, 1 *Barb. Ch. Rep.* 125, the vendor agreed to take, in part payment of the agreed price of his farm, a lot owned by the vendee, relying upon his false statements as to its character, and value, made to induce the vendor to take it in part payment. The chancellor held that the price of the farm remained unpaid, in fact, to the extent of the difference between its actual value, and what it would have been, if such representations had been true; and that when by the fraud of the vendee, a part of the price of the lands sold, remains in fact unpaid, although the vendor supposed he had been paid in full at the time, there is no waiver of the equitable lien for the part of the price that actually remains unpaid.

But it can make no difference in principle, that the price remains unpaid by reason of the *fraud* of the vendee. In *Low vs. Jones*, 11 *Shepley* 439, a farrier, having a lien on a horse for care and keep, bought him of one, who assumed to be, but was not the owner, and had no authority to sell him, the farrier's bill being allowed in part payment; it was held, that as against the owner of the horse, his bill was not paid, and that he retained his lien therefor. The court say that he could not properly be considered as having waived, or as intending to waive it, by his said contract to receive the horse in payment of the amount due to him, paying the difference in value, when he obtained no title by that contract, because the person who made it with him had no authority to make it. "By that want of authority the contract became ineffectual and void for any purpose."

In that, as in the New York case, it was because of a deceit practiced on the farrier, that his bill was not paid; but it is not on that account, that the court hold that he had not lost his lien, but because the contract was a nullity—therefore as inoperative to divest the lien, as to transfer the horse.

So, in the case at bar, it would seem that Balme's want of authority would make the contract for the transfer of the warrants as ineffectual and void for any purpose, as the contract in the case above cited, and if so, it is evidently wholly immaterial whether Balme was acting in good faith or not.

If the price be not paid, the vendor's lien-exists, unless it be expressly, or impliedly waived. In *Selby vs. Stanley*, 4 *Minn.* 65, this court has laid down the rule as to what circumstances will be conclusive evidence of the vendor's intention to waive his lien. An examination of that case will show, that the cases there put, all involve the idea of

Duke v. Balme et al.

his voluntary renunciation of present payment, and taking something of value as security for future payment, and have no analogy to the case at bar, in which the vendor stipulated for present payment, not in cash, but in kind, but did not get it.

The vendor did not, as appellant supposes, look to other property than the land for his pay. He conveyed the land, believing he had been paid, though in fact he had not. Such a state of facts cannot be evidence of an intention to waive his lien, for unless the purchase money be unpaid, the lien does not exist, and the vendor cannot possibly be held to intend to waive what (all being supposed to know the law) he must be taken as believing, at the time of his acceptance of the warrants, to have no existence.

It is urged that the vendor cannot enforce his lien against Mrs. Balme. We do not think, however, that she can be considered as a purchaser for value.

If we were to concede to the appellant that one who accepts a conveyance of real estate in payment of a precedent debt, is a purchaser for value within the rule that the lien does not bind the land in the hands of a *bona fide* purchaser for value, without notice, still the facts found by the referee do not establish the relation of creditor and debtor between her and her husband, in any sense in which the land can be properly said to have been taken by her in payment of a precedent debt.

Balme, in one sense, might be said to owe his wife, for he was bound to account to her for the moneys advanced to him; but the advance had no other characteristic of an ordinary debt. It, or what was bought with it, was to be his own till called for, but when requested, he must turn over to her the funds or lands purchased with them. No time was set for payment; no provision for payment of

interest, or indeed, of principal, in any proper sense, but on demand, Balme's ownership of the property ceased, and his wife became entitled to it, whatever its value or character. He would seem to have been, in law, rather an agent for his wife, than her debtor.

As to the plea of the statute of limitations, the referee finds, that this transaction was on October 30th, 1856, and that Duke discovered that the assignments were forged upon two warrants in 1861, on the other in 1863. The referee finds that in November, 1858, Balme departed from Minnesota for Europe; that his wife left in August, 1862; that neither returned to this state till about October 1st, 1868; that from December, 1858, to September, 1868, Balme was a non-resident of the state, and his wife from August, 1862, to September 1st, 1868; that since the latter part of September, or October 1st, 1868, both have been residents of the state. The return does not disclose when this action was commenced. It would be necessary for the appellant to have shown that fact, before he could have availed himself of the statute. We gather, however, from counsels' briefs, that it must have been commenced, at least, as early as October, 1868. If so, it is evident, that whether, as appellant seems to concede, the statute did not begin to run till such discovery, or otherwise, plaintiff's right of action, by reason of such absence, is, in any event, not barred by the statute. *Gen. Stat. ch.* 66, *sec.* 15

Balme had no notice of any want of title in said warrants till October, 1868. If Balme has any equities by reason of Duke's not sooner informing him thereof, he should have pleaded them. It is not, however, even alleged that plaintiff knew where Balme was during his absence from the state, or in what way, if at all, he had suffered from such

want of notice; nor are any such facts found by the referee.

Judgment affirmed.