[City National Bank v. Jeffries.]

# City National Bank *v.* Jeffries.

### *Action on Attachment Bond.*

1. *When attachment wrongfully sued out; measure of damages.*—To justify an attachment, there must be a debt, due or to become due, and one of the enumerated statutory grounds therefor must exist; and if either of these be wanting in fact, no matter how sincerely the attaching creditor may believe it to exist, the attachment is wrongful; and in such case, without more, the measure of recovery in a suit on the attachment bond is the actual injury sustained.

2. *When attachment vexatiously sued out; measure of damages.*—If there be no reasonable foundation for believing that a statutory ground for an attachment exists, or if the process be sued out wantonly or recklessly without probable cause, or if it be resorted to in a mere race of diligence to obtain a first lien, when no statutory ground exists in fact, or is reasonably believed to exist, then the attachment is vexatious as well as wrongful; and exemplary or vindictive damages may be recovered.

3. *Action on attachment bond; complaint must negative ground of attachment; burden of proof.*—In an action on an attachment bond, to recover damages for wrongfully, or wrongfully and vexatiously suing out an attachment, the complaint must negative the truth of the sworn ground on which the process issued; and on the plaintiff rests the burden of proving the non-existence of such ground, or, what is the same thing, the falsity of the affidavit.

4. *Same; can not be maintained for vexatious attachment, unless also wrongful.*—An action on the attachment bond can not be maintained for vexatiously suing out an attachment, without averring and proving that it was also wrongfully sued out.

5. *Same; mental suffering not the subject of direct proof, but an inference to be drawn by the jury.*—While one who has been wrongfully and vexatiously attached, may recover on the attachment bond for his wounded feelings, such suffering is not the subject of direct proof, but is an inference to be drawn by the jury from the manner and carelessness of the wrong; and hence, in such case, it is not competent for the plaintiff to testify that by the issue and levy of the attachment he "was much distressed and harassed in body and mind," or that he "was almost crazy;" or for him to show by other witnesses the apparent distress he suffered in consequence of the attachment.

6. *What a fraudulent disposition of property authorizing attachment.*—If a debtor, assuming to make a composition with his creditors on equal terms, obtains from two of his creditors money to enable him to make the composition, and secretly secures them, by deed of trust on property subject to the payment of his debts, the full amount of their demands, this would be a fraudulent disposition of property, authorizing an attachment at the suit of any creditor thereby attempted to be defrauded; but if the non-preferred creditor had knowledge of the source from which the money came, and the terms on which it was obtained, before he accepted the terms offered by the debtor, he can not be heard to claim that he was defrauded, or be justified in suing out an attachment on that ground.

7. *Suit on attachment bond; when notice to an attorney constructive notice to his client.*—Where a debtor in failing circumstances offered to make a composition with his creditors on equal terms, and, to enable

[City National Bank v. Jeffries.]

him, with money he then had on hand, to make the composition, entered into an agreement with two of his largest creditors for a loan of money, he to secure them their debts and the contemplated loan by mortgage on property subject to sale under execution, but soon afterwards, the money not having been loaned, or the composition made, the creditors making the agreement, and another creditor who had agreed to compound on the terms proposed, but had no knowledge or information of said agreement, and acting by attorney, sued out attachments against the debtor; and, at the time the agreement was made; and the attachments were issued, the three attaching creditors were represented by the same attorney, who had full knowledge of the agreement at the time it was made, he then endeavoring to collect the claims of his several clients, and who, in fact, sued out the attachment in favor of the creditor agreeing to compound, and on whose advice that a ground of attachment existed, it was ordered to be issued,—*held*, in an action by the debtor against the sureties of such creditor on his attachment bond, that the knowledge of said agreement by the attorney was constructive knowledge to the creditor.

8. *Liability of attaching creditor for vindictive damages; rule stated when attachment sued out by attorney.*—If a creditor living in another State entrust a claim against his debtor to a reputable attorney in this State for collection, and that attorney informs him that there exists a ground for suing out an attachment, and thereupon he orders the attachment issued, and, at the attorney's request, furnishes resident sureties to make the bond, in the absence of other knowledge or information, vexatiousness or malice can not be imputed to the creditor; and he and his sureties on the attachment bond are not liable to exemplary or vindictive damages; but this rule would not apply, if the creditor had actual knowledge of the facts relied on as ground for attachment, and such facts were insufficient, and, in truth, no ground for attachment existed.

9. *Suit on attachment bond; effect of sale of attached property on damages.*—If, on the trial of an action on an attachment bond, it be shown that the property attached yielded its full value on a sale thereof by the sheriff, this may be considered in mitigation of damages; but it can go no further.

APPEAL from Hale Circuit Court.

Tried before Hon. JOHN MOORE.

This action was commenced on 5th April, 1881, by A. S. Jeffries against the City National Bank of Selma and another, and was founded on an attachment bond executed by the defendants as sureties of Kahn, Wolf & Sons, at whose suit an attachment was issued out of the Circuit Court of Hale county against the plaintiff, a merchant, on 4th April, 1881, and levied on a stock of goods, wares and merchandise owned by him. The complaint contains five counts, each averring the issue and levy of the attachment, the execution and condition of the bond, and damage to the "credit and property" of the plaintiff, in substantially the same language, and differing only in the breaches of the bond assigned. The breach assigned in the first count is, that "said attachment was wrongfully sued out" against the plaintiff; in the second, that "said attachment was vexatiously sued out" against him; in the third, that "said attachment was wrongfully sued out against him in this, that the ground upon which said attachment was procured to be issued, to-wit,

that said A. S. Jeffries was fraudulently withholding moneys, property or effects liable to the satisfaction of his debts, was false;" in the fourth, that "said attachment was vexatiously sued out against him in this, that the ground upon which said attachment was procured to be issued, was that said A. S. Jeffries was fraudulently withholding moneys, property or effects liable to the satisfaction of his debts," and that such ground was false and without foundation; and in the fifth, that "said attachment was wrongfully and vexatiously sued out against him in this, that the ground upon which said attachment was procured to be issued, was that said A. S. Jeffries was fraudulently withholding moneys, property or effects liable to the satisfaction of his debts," and that such ground "was false, without foundation, and without probable cause." To each count of the complaint the defendants demurred, assigning several grounds. The court overruled the demurrers, and the defendant filed two pleas; the first denying "each and every allegation" of the complaint, and the second averring that "the said attachment was not sued out wrongfully, or vexatiously, or without probable cause." On issue joined on these pleas the cause was tried, the trial resulting in a verdict and judgment for the plaintiff.

The statement contained in the opinion, of the facts disclosed by the evidence introduced on the trial renders necessary only the following statement, supplemental in its nature. The plaintiff's negotiations with Woodruff & North and Bamberger, Bloom & Co. for a loan of money, to enable him to make the desired composition with his creditors, referred to in the opinion, failed, after a mortgage or deed of trust on plaintiff's stock of goods had been prepared, ready for execution by the plaintiff, to secure their debts and the contemplated loan; and thereupon Woodruff & North, Bamberger, Bloom & Co. and Kahn, Wolf & Sons, the latter acting through their attorney, sued out attachments against the plaintiff, in the order above named, on the ground that the plaintiff had moneys, property, or effects liable to satisfy his debts, which he fraudulently withheld. These attachments were levied on plaintiff's stock of goods, it constituting substantially all his property, and said goods were sold by the sheriff under an order of court. Judgments were obtained in these suits, that in favor of Kahn, Wolf & Co. being for $1256.99. There was evidence tending to show that the property attached sold for less than the amount of the debts of the attaching creditors; and that the plaintiff had some money on hand at the time the attachments were issued. To the evidence touching the plaintiff's negotiations and agreement with Woodruff & North and Bamberger, Bloom

& Co., the defendants objected; but the court overruled their objection, and they excepted.

The court charged the jury, *ex mero motu*, among other things, as follows: " That while the agreement by Jeffries to make a mortgage on his stock of goods, by which he was to be left in possession of the goods, and the debts of Woodruff & North and Bamberger, Bloom & Co. were to have been paid in full, when he represented to his other creditors, that all were to fare alike in a proposition to pay 33 1-3 per cent. on his entire indebtedness, was a fraud upon his other creditors, still if they find from the evidence that ——— was then the attorney for Kahn, Wolf & Sons, and, as such attorney, was advised and informed of said proposed arrangement by Jeffries, and such attorney took part in, and assented to said arrangement, then the said proposed arrangement would not be fraudulent as to Kahn, Wolf & Sons; and, in that event, neither they nor the sureties on the bond can avoid liabilities in this suit because of said fraudulent, or intended fraudulent arrangement." The court gave, at the defendants' request, two charges to the jury, embodying the instruction, that if Kahn, Wolf & Sons did not participate in, or know of the agreement made with Woodruff & North and Bamberger, Bloom & Co., then the contemplated mortgage would have been a fraudulent disposition of plaintiff's property, and Kahn, Wolf & Sons were justified in suing out an attachment; and, on reading each of them to the jury, stated that " it was to be considered by them in connection with the general charge; and that if — · — was the attorney for said Kahn, Wolf & Sons, and participated in the negotiations looking to that arrangement, such notice of the transaction by him was notice to said Kahn, Wolf & Sons, and they could not avail themselves of such fraudulent transaction and purpose in an action upon the attachment bond, so far as actual damages were concerned."

The court refused to give the following charges, requested by defendant: (1) " Vindictive damages can not be recovered against sureties on an attachment bond, when the attachment was sued out by an agent or attorney for the principal in said attachment.    When so sued out, actual damages only, in any event, can be recovered; and not even actual, or any other damages, when, upon any legal ground, it is rightfully sued out.    Actual damages do not include wounded feelings of the plaintiff, but are such only as he has sustained in his property, and which are the legal, natural and proximate result of the attachment wrongfully sued out; for, if the attachment was rightfully sued out, or if the plaintiff has failed to show you that it was wrongfully sued out, then no damages at all can be recovered."    (2) " Unless the jury believe from the evidence

that less was realized for the benefit of Jeffries or his creditors from the sale of the goods levied on, than would have been realized, if said attachment had not been issued, said Jeffries has sustained no actual damages in consequence of the levy on, and sale of said goods. It devolves upon the plaintiff to show that less was so realized; and unless he has done so to the satisfaction of the jury, he can not recover in damages by reason of such levy and sale. If as much was realized under such levy and sale for the plaintiff, and applied to his just debts, as would have been realized and so applied, if the attachment had not been sued out, then said Jeffries has sustained no damages to, or loss of his property, and can recover no damages therefor." (3) "If the jury believe from the evidence, that attachments, rightfully issued, were placed in the hands of the sheriff of Hale county in favor of creditors of said Jeffries for debts due them by said Jeffries, and that said Jeffries' indebtedness was largely more than the value of the goods levied upon under said attachments; and if they further believe that said goods so levied upon were sold by the sheriff by order of the court as perishable property, to save waste and loss, and said sale was made by said sheriff under said order of court, and was properly and fairly conducted by him, then the defendant would not be responsible for any damages to Jeffries by reason of such sale." (4) "The fact, if it be a fact, that Kahn, Wolf & Sons did not demand the $1500 mentioned in this case, or other sum then in the hands of A. S. Jeffries, or so much thereof as was necessary to satisfy their debt from said Jeffries, will not authorize the jury to find a verdict for Jeffries, if they believe he was fraudulently withholding his money, property, or effects from the payment of his debts. A wilful refusal or wilful neglect to pay a just debt for the purpose of hindering, harassing or delaying a creditor, when the party refusing or neglecting has the property, money, or effects liable to such payment, is a fraudulent withholding thereof; and, in such a case, an attachment could lawfully issue, without making the party attaching liable for damages, even though negotiations to settle such indebtedness were in progress between the parties."

The court charged the jury, at the plaintiff's request, "that notwithstanding all the charges given by the court in the case, yet, if the jury believe that, at the time the attachment issued, Jeffries was not corruptly and fraudulently withholding his property, money, or effects from the payment of his debts, they must find a verdict for the plaintiff, unless they believe and are satisfied from the evidence that he had fraudulently disposed of, or was about fraudulently to dispose of his property."

The defendants excepted to that portion of the general

[City National Bank v. Jeffries.]

charge copied above, to the explanations by the court of the charges given at their request, to the refusal to give the charges requested by them, and to the charge given at the plaintiff's request; and these rulings, and other rulings, noted above, and in the opinion, are here assigned as error.

JOHN WHITE, and THOS. R. ROULHAC, with whom was A. A. COLEMAN, for appellants. (1) The second count in the complaint did not aver that the attachment was wrongfully sued out, and it was demurred to on that ground. The court erred in overruling the demurrer.—Code, §§ 3317–18; *Durr v. Jackson*, 59 Ala. 203; *Sharpe v. Hunter*, 16 Ala. 765; *Floyd v. Hamilton*, 33 Ala. 235; *McCullough v. Walton*, 11 Ala. 492; Drake on Att. §§ 170 and 730. (2) Neither the first nor the second count denies the truth of the ground on which the attachment was sued out; both were demurred to on that ground, and the demurrers were overruled. This was error. *Durr v. Jackson, supra; Tiller v. Shearer*, 20 Ala. 527. (3) Jeffries ought not to have been allowed to state that "he was much distressed in body and mind—was almost crazy." This was a fact for the finding of the jury on proof of all the surrounding circumstances.—*Sledge v. Scott*, 56 Ala. 202; *Hames v. Brownlee*, 63 Ala. 277; *Herring v. Skaggs*, 62 Ala. 187; *Gregory v. Walker*, 38 Ala. 26; *Oxford v. Spradley*, 51 Ala. 171. Nor should he have been allowed to prove by another witness that he *appeared* distressed and disturbed.—*Johnson v. State*, 17 Ala. 623; *Hames v. Brownlee, supra*. (4) The transaction into which Jeffries proposed to enter with Woodruff & North and Bamberger, Bloom & Co., was fraudulent as to Kahn, Wolf & Sons and his other creditors. That such a transaction, consummated, would have been a fraudulent conveyance, is sustained by the following authorities: *Tickner v. Wiswall*, 9 Ala. 305; *Constantine v. Twelves*, 29 Ala. 607; *Price v. Mazange*, 31 Ala. 701; *King v. Kenan*, 38 Ala. 63; *Perry Ins. & Trust Co. v. Foster*, 58 Ala. 517. If fraudulent when consummated, it would have furnished just ground for an attachment by Kahn, Wolf & Sons, or other creditors in like situation. (5) It is a full defense to an action for the wrongful suing out of an attachment, that any one of the legal causes of attachment existed, though the particular cause stated in the affidavit may be disproved.—*Kirksey v. Jones*, 7 Ala. 622; *Lockhart v. Woods*, 38 Ala. 631. (6) The attorney for Kahn, Wolf & Sons was also, by prior employment, the attorney for Woodruff & North and Bamberger, Bloom & Co., and in the negotiations looking to the mortgage to the latter, he was acting for them; and the law will not hold Kahn, Wolf & Sons to answer for what he did for another and prior clients,

by their direction.—*French v. Ford*, 72 Mo. 250; 1 Brick. Dig. §§ 156, 157, p. 63; *Lucas v. Bank*, 2 Stew. 321; *Terrell v. Branch Bank*, 12 Ala. 505; *Mundine v. Pitts*, 14 Ala. 89; *Worsley v. The Earl of Scarborough*, 3 Atk. 392; *Distilled Spirits case*, 11 Wall. 366. His knowledge, therefore, was that of his clients to whose business it pertained. It belonged to them, and thereby is repelled the presumption that it could be the knowledge of, or notice to later clients, who had no part in the transaction.—*Distilled Spirits case, supra; Westfield Bank v. Cornen*, 37 N. Y. 320; *Farmers' etc. Bank v. Payne*, 25 Conn. 444; *U. S. Ins. Co. v. Shriver*, 3 Md. Ch. 381; *McCormick v. Wheeler*, 36 Ill. 114; *Willis v. Vallette*, 4 Metc. (Ky.) 186. Again, under a general authority to collect a debt, an attorney can not enter into an arrangement with the debtor for him to make a fraudulent disposition of his property; and, in order for notice to an agent or attorney to operate as notice to his principal, and bind the principal by assent, it must be of some fact or transaction within the scope of the agent's authority; and if without the scope of his authority, to be binding upon the principal, it would require his express assent, which is not shown or attempted to be shown in this case.—*Terrell v. Branch Bank*, and *Mundine v. Pitts, supra*.

THOS. SEAY, with whom were BROOKS & ROY, *contra*: (1) The demurrers were properly overruled. The suit is not an action on the case, as in *Tiller v. Shearer*, 20 Ala. 527, but is an action on the attachment bond, for the recovery of damages, as in *Dickson v. Bachelder*, 21 Ala. 699. By the affidavit required by the statute, the attaching creditor affirms, among other things, that the attachment is not sued out for the purpose of vexing or harassing the defendant; and the bond required is conditioned, that the plaintiff will prosecute the attachment to effect, and "pay the defendant all such damages as he may sustain from the wrongful or vexatious suing out of such attachment." If a complaint alleges that the attachment was sued out wrongfully, this averment sufficiently negatives the affidavit, so far as concerns a suit for actual damages. *Dickson v. Bachelder, supra*. On the other hand, if a complaint alleges that the attachment was vexatiously sued out, this averment certainly negatives the sworn statement, that the attachment was not sued out for the purpose of vexing or harassing the defendant. Either averment does negative the facts stated in the affidavit.—*Gabel v. Hammerwell*, 44 Ala. 336; *Flanagan v. Gilchrist*, 8 Ala. 620. The bond is conditioned to pay damages for the wrongful or vexatious suing out of the process. The particular ground stated in the affidavit may be untrue, and other grounds may exist; and if they do exist, not-

withstanding the falsity of the affidavit, when shown by the proof, they constitute a good defense.—*Lockhart v. Woods*, 38 Ala. 631; *Flanagan v. Gilchrist, supra.* (2) The effect of the attachments upon the plaintiff's feelings was the prime subject of inquiry as to exemplary damages; and the testimony on this subject was properly admitted.—*S. & N. Ala. R. R. Co. v. McLendon*, 63 Ala. 266, and cases cited. (3) While it may be true, that a principal is not responsible for the vexatious conduct of his attorney, nor for his reckless disregard of the debtor's rights, it is equally true, that, where client and attorney act in concert, both are liable.—*Wood v. Weir*, 5 B. Mon. 544. And generally the principal is liable for the torts of his agent.—Story on Agency, § 552; *Locke v. Stearns*, 1 Metc. 560; Abbott's Trial Evidence, 653. We do not pretend to say that Kahn, Wolf & Sons are liable for any *actual* ill-will or grudge of their agent; but it is not only actual ill-will for which damages are recoverable. "The absence of probable cause, coupled with the unlawful act of suing out the writ, is the vexatious or malicious abuse of the process, against which the statute intends to guard, and for which the jury are authorized to give vindictive damages."—*Durr v. Jackson*, 50 Ala. 210. See also *Long v. Rodgers*, 19 Ala. 321. The doctrine contended for in this case is entirely consistent with *Kirksey v. Jones*, 7 Ala. 622, and *McCullough v. Walton*, 11 Ala. 492.

STONE, J.—Our statutes, and the rulings upon them recognize two elements and measures of damages, when the party whose property has been attached, complains. The first is, when it is claimed that this extraordinary process has been wrongfully sued out. The meaning of this is, not that the attachment proceedings are faulty, and liable to be abated or quashed. Such defect furnishes no ground for the recovery of damages. To be "wrongful" within the statute, none of the statutory grounds for attachment must exist.—*Sharpe v. Hunter*, 16 Ala. 765; Drake on Att. § 170; *Durr v. Jackson*, 59 Ala. 203. To justify an attachment, there must be a debt, due or to become due, and one of the enumerated statutory grounds for attachment must exist.—*Lockhart v. Woods*, 38 Ala. 631; *Durr v. Jackson, supra.* If either of these be wanting in fact, no matter how sincerely the attaching creditor may believe it to exist, then the attachment is wrongful, but, without more, it is only wrongful. In such case, the measure of recovery in a suit on the bond is the actual injury sustained.—*McCullough v. Walton*, 11 Ala. 492; *Floyd v. Hamilton*, 33 Ala. 235; *Durr v. Jackson, supra.* See on the subject of damages in such cases *Higgins v. Mansfield*, 62 Ala. 267. And in such

action, the *onus* rests with the plaintiff to prove the falsity of the affidavit, or, what is the same thing, the non-existence of the ground on which the attachment was sued out.—*O'Grady v. Julian*, 34 Ala. 88, and authorities.

The second element of damages consists in the "vexation" with which this process is resorted to. If there be no reasonable foundation for believing that a statutory ground for attachment exists, or if the process be sued out wantonly or recklessly without probable cause, or if it be resorted to in a mere race of diligence to obtain a first lien, when no statutory ground exists in fact, or is reasonably believed to exist, then it is vexatious as well as wrongful, and exemplary or vindictive damages may be recovered. But the malice, wantonness, or recklessness of the agent or attorney suing out the attachment can not be visited on his principal, unless the latter authorized or sanctioned the manner, or malevolence of the act.—*Kirksey v. Jones*, 7 Ala. 622; *McCullough v. Walton*, 11 Ala. 492; quoted approvingly in Drake on Att. § 182.

In declaring for wrongfully and vexatiously suing out an attachment, it was ruled, in *Tiller v. Shearer*, 20 Ala. 527, that a failure to negative in the complaint the truth of the ground on which the attachment was sued out, was fatal on demurrer. That was an action on the case. In *Dickson v. Bachelder*, 21 Ala. 699, there was no express negative of the sworn ground for the attachment. The breach assigned was, that the attachment was wrongfully sued out, and, on demurrer, the complaint was held sufficient. In the last case the suit was on the bond. It is contended for appellee that the difference in ruling is justified by the different forms of action employed; and that when suit is on the bond, no express denial of the ground of attachment is necessary. We think this alleged distinction does not exist. The bond, as we understand it, does not change the nature of the liability a suitor incurs by suing out an attachment wrongfully and vexatiously. It simply makes secure the damage inflicted by the abuse of this extraordinary process. The principles governing the two actions, as to the relevancy of evidence, and the measure of recovery, are the same, with the exception that, in a suit on the bond, the recovery can not exceed the penalty expressed in the face of it. But this question was settled in a later ruling of this court. In *Durr v. Jackson*, 59 Ala. 203, the suit was on the bond, and the court, referring to *Tiller v. Shearer*, 20 Ala. 527, said: "It is necessary for the plaintiff to aver in his complaint the falsity of the particular fact, or facts, which may be stated in the affidavit as the ground of attachment." We adhere to this last ruling. But there is another, and, as we think, conclusive reason, why in suits for wrongfully and vexatiously suing out attachments,

[City National Bank v. Jeffries.]

the complaint should negative the truth of the sworn ground on which the process issued. We have shown above that in suits like the present, the *onus* is on the plaintiff to prove the untruth of the ground of attachment. To hold that the plaintiff must make proof of this negative fact, yet need not aver it, would be an anomaly. We have more than once held that actions like the present one "bear a closer resemblance to an action for a malicious prosecution, than to any other action at common law."--*O'Grady v. Julian*, 34 Ala. 88 ; *Durr v. Jackson*, *supra*. Would a complaint for a malicious prosecution be good, which did not aver plaintiff's innocence of the offense for which he had been prosecuted?

Another question. Can a suit be maintained for *vexatiously* suing out an attachment, without showing it was also *wrongful?* In other words, if one of the statutory grounds for attachment exists, can there be a recovery for the mere vexation, which may enter into the motive of its issue? Invoking the anology of the suit for malicious prosecution, only a negative answer can be given to this question. The prosecution must be groundless, before the question of malice, wantonness, or vexatious motive can become a material inquiry.— *Chandler v. McPherson*, 11 Ala. 916 ; *Ewing v. Sanford*, 21 Ala. 157 ; 2 Brick. Dig. 236, § 1. There might be abuse in the execution of an attachment, which had been sued out on the actual existence of one of the statutory grounds, but this would be a wrong for which no redress could be obtained by suit on the bond.

The principles declared above enter largely into the solution of the questions raised by the demurrers to the several counts of the complaint. The first, second and fourth counts of the complaint are faulty. The first fails to negative the truth of the ground, on which the attachment was prayed and obtained. The second has the same imperfection, and both it and the fourth are wanting in the averment, that the attachment was wrongfully sued out; and, as claims for exemplary damages, they are further faulty in not averring that the attachment was sued out without probable cause for believing the alleged ground to be true. The third and fifth counts are sufficient.

*Pollock v. Gantt*, 69 Ala. 373, like the present case, was a suit by a merchant, to recover damages for an attachment sued out and levied, alleged to be wrongful and vexatious. The suit was on the bond. In that case we laid down the general rules to be observed in the proof and assessment of damages. We will not repeat them. In the present case, the plaintiff was permitted to testify, against the objection and exception of defendants, that by the issue and levy of the attachment he "was much distressed and harassed in body and mind ; " that he "was almost crazy." He was also permitted to prove by other

[City National Bank v. Jeffries.]

witnesses the apparent distress he suffered in consequence of the attachments. Such testimony as this can be legal, only on the theory that for wrongs, identical in nature and degree, the man of delicate organism and acute sensibilities is entitled to greater damages than one of a more stoical nature. We can not agree to this. That one who has been wrongfully and vexatiously attached may recover for his wounded feelings, can not be denied. But such suffering is not the subject of direct proof. It is an inference to be drawn by the jury from the manner and causelessness of the wrong. The nervous organization of the sufferer can not enter into the account. Furthermore, such test might operate very unjustly. The loss of available means, and of commercial credit might greatly distress one, while wounded pride, or impaired social standing would equally oppress another. The court erred in admitting this proof.—*Herring v. Skaggs*, 62 Ala. 180; *Sledge v. Scott*, 56 Ala. 202.

Kahn, Wolf & Sons, merchants doing business in Louisville, Kentucky, were the attaching creditors in this cause. Their attorney, who made the affidavit and sued out the attachment, resided in Greensboro, Alabama, where Jeffries, the debtor, also resided, and conducted his mercantile business. The proof shows that it was on the attorney's judgment and information, that his clients authorized him to attach. He had informed his clients that a ground for attachment existed, and, at his instance, they procured for him resident security to make the attachment bond. The circumstances tend strongly to show that Kahn, Wolf & Sons had no personal knowledge of Jeffries' means or purposes, other than what was communicated to them by their attorney, and by Jeffries himself, as hereafter shown. Jeffries had become embarrassed, and had submitted a circular to his creditors, offering them one-third of their several demands in full discharge of his liabilities. That proposition was referred by Kahn, Wolf & Sons to their said resident attorney, and he advised them to accept it. Before Jeffries submitted to his creditors his proposition of compromise at one-third of their claims, he had negotiated with two of his creditors—Woodruff & North and Bamberger, Bloom & Co.—for a loan of sixteen hundred dollars, with which and certain moneys he himself could furnish, he proposed to effect said compromise. The sum to be thus raised, and fifteen or sixteen hundred dollars which Jeffries himself proposed to supply, it was estimated, would pay thirty-three and one-third per cent. to all the creditors except Woodruff & North, and Bamberger, Bloom & Co. These were to receive no part of the cash composition; but in consideration that they furnished the money aforesaid, they were to have the amount of their several claims, and the money thus to be advanced by them, secured to be paid to them in

13

[City National Bank v. Jeffries.]

full. The security for this payment was to consist of a mort-gage by Jeffries of his stock of merchandise, and the debts to be paid in monthly installments. Jeffries had previously sent a circular letter to his creditors, stating what he said were his assets and liabilities; and on that circular his offer of compro-mise was based. The creditors, except Woodruff & North and Bamberger, Bloom & Co., were not informed that Jeffries was to secure the last named creditors to be paid in full. These were two of the largest creditors. The same attorney who made the affidavit and sued out the attachment in favor of Kahn, Wolf & Sons, was counsel for Woodruff & North and Bamberger, Bloom & Co. in the matter of their claims against Jeffries; and was fully informed of the source and terms of the loan Jeffries proposed to effect. He was selected to act as trustee in the mortgage Jeffries was to make on his merchan-dise, and, at the instance of Jeffries, drew the mortgage. All this took place before Kahn, Wolf & Sons agreed to accept the terms of compromise, and before they were telegraphed by their said attorney that a ground for attachment existed. Kahn, Wolf & Sons had no actual notice of the moneyed arrangement and terms of security, agreed on between Jeffries on the one side, and Woodruff & North and Bamberger, Bloom & Co. on the other. Was notice to their said attorney notice to them?

It is clearly the law that if a debtor, assuming to compound his debts on equal terms, secretly secure a preference and larger payment to one or more of his creditors without the knowledge of the others, this is a fraud alike by such debtor, and by the creditor attempted to be preferred. Such fraud, secretly perpe-trated, would be a fraudulent disposition of property, and if the property thus conveyed was subject to the grantor's debts, it would be a fraudulent disposition of property, and authorize an attachment at the suit of a creditor, attempted to be de-frauded thereby. If the non-preferred creditor, however, knew of the source from which the money came, and the terms on which it was obtained, then he would not be heard to complain that he was defrauded. *Volenti non fit injuria.—Clark v. White*, 12 Pet. 178.

As we understand this record, there is no testimony tending to show Kahn, Wolf & Sons had any notice that other creditors were to share more largely than themselves. The ground on which they are sought to be charged with notice, is that their attorney had full knowledge, and that was constructive knowl-edge to them. The fact, as we have shown, is, that the same attorney was counsel for three firms, Woodruff & North, Bam-berger, Bloom & Co. and Kahn, Wolf & Sons. He was, at one and the same time, endeavoring to collect the several claims of his several clients. Jeffries was in failing circumstances, and

the attorney knew it.    The source from which Jeffries proposed to raise money with which to compromise his debts, and the terms on which he was to raise the money, were known to their common attorney, before the terms were accepted by Kahn, Wolf & Sons, and before the attachment was issued or authorized.    It was on information of the attorney that a ground for attachment existed, that the plaintiffs ordered its issue, and the attorney who gave the information sued it out.    There can be no question that this knowledge or information was brought home to the agent and attorney, while he was in the very act of employing or devising means for the collection of each of the claims, and under the severest limitation of the rule anywhere asserted, notice to the agent or attorney is notice to the principal.    Many cases carry the doctrine much further.— *White v. King*, 53 Ala. 162 ; *Sheldon v. Cox*, Ambler, 624 ; *LeNeve v. LeNeve*, 3 Atk. 646 ; *Myers v. Ross*, 3 Head, 60 ; *Clark v. Fuller*, 39 Conn. 238 ; *Bank of Milford v. Town of Milford*, 36 Conn. 93 ; *Miller v. Fraley*, 21 Ark. 22 ; *Duke v. Balme*, 16 Minn. 306 ; Wade on Notice, § 679 ; Leading Cases in Eq., Vol. 2, Part 1, pp. 109 (35), 144 (77), 168 ; *The Distilled Spirits*, 11 Wall. 356.

We find no error in the rulings of the circuit court, either in the admission of evidence, or in the charge given, bearing on the question last above considered.    This applies also to the explanations the court gave of the charges given at the request of defendants.

Several charges asked by defendants were refused.    It is certainly true, as a general rule, that the malice or vexatious conduct of the agent suing out the attachment can not be visited on the principal ; but it is equally true, if the principal authorize, procure, or sanction such vexatious conduct, then vindictive damages may be recovered of him.    If a claim in a distant locality be entrusted to a reputable attorney for collection, and that attorney informs his client that there is a ground for suing out an attachment, and the creditor thereupon, at the attorney's request, furnishes sureties to make the bond, in the absence of other knowledge or information, vexatiousness or malice can not be imputed to the creditor, and he is not responsible for exemplary or vindictive damages.    In the absence of an actual ground for the issue of the attachment, the creditor would be liable for the actual damage done ; but he would not be without probable cause for believing he had grounds for suing out the attachment, and, therefore, would not be liable for vindictive damages.    This rule, however, would not apply, if the creditor or client had actual knowledge of the facts relied on as ground for attachment, if such facts were insufficient, and there was, in truth, no ground for attach-

ment. The first of the charges refused ought to have been given. The second charge asked was properly refused. If it be shown that the property attached has yielded its full value, this may be considered in mitigation of damages. It can go no further. The third charge asked should have been given. The fourth charge asked is somewhat confused, and calculated to mislead. Moreover, some of its utterances are not shown to have been sustained by any testimony.

The charge last noted, given at the instance of plaintiff, is subject to criticism, in two respects. " Corruptly and fraudulently withholding," goes beyond the statute, and to a nonprofessional mind expresses a stronger degree of fault than the statutory words, " fraudulently withholds." Moreover, it is a full defense to this action, if any one of the statutory grounds for suing out the attachment exists.

The judgment of the circuit court is reversed, and the cause remanded.