7203

## OGILVIE v. WESTERN UNION TEL. CO.

1. TELEGRAPH COMPANIES—MENTAL ANGUISH.—Evidence admitted did not tend to show plaintiff's suspense and suffering were beyond what an average normal mother would feel in her situation caused by delay in delivering a telegram.

2. IBID.—DAMAGES—INCOME.—EVIDENCE as to the receipts of a railroad company at a particular station, whose agent at that point acted also as agent of the telegraph company there and that his work in his dual capacity was too much for one man, is not wholly irrelevant. But it is not supposed the jury estimated the damages found by it against the telegraph company by reference to the income of the railroad company.

3. IBID.—MENTAL ANGUISH.—Regret or disappointment of a mother in being delayed in reaching and ministering to her son by reason of delay in delivery of a telegram may have been so keen, or bitter, or intense, as to be properly characterized as mental anguish.

4. IBID.—OFFICE HOURS—ISSUES.—The reasonableness of office hours of a telegraph company is a question of law where there is no dispute as to the facts, but where there is such dispute, the issue should be sent to the jury.

5. IBID.—PUNITIVE DAMAGES.—Unexplained delay at relay office of telegram from 4 p. m. of one day until 10:06 a. m. next day is sufficient to carry issue of punitive damages to the jury.

Before WILSON, J., Lexington, January, 1908.   Affirmed.

Action by Emma M. Ogilvie and J. W. Ogilvie against Western Union Telegraph Company.   From judgment for plaintiffs, defendant appeals.

*Messrs. Geo. H. Fearons, Nelson & Nelson and Efird & Dreher,* for appellant, cite: *Witness should only state facts as to suffering mental anguish:* 69 S. C., 537; 73 S. C., 524; 70 S. C., 423; 73 Ala., 192. *Statute is not intended to permit recovery for annoyance at negligent act:* 81 S. C., 235; 61 S. W., 492. *Reasonableness of office hours is for Court:* 71 S. C., 306; 78 S. C., 358; 81 S. C., 235. *Agent of telegraph company, acting also as agent of railroad company, only re-*

*quired to use due care in serving both masters:* 77 S. C., 60; 76 S. C., 301; 73 S. C., 20.

*Messrs. Graham & Sturkie,* contra, cite: *Testimony only showed plaintiff was a normal woman:* 69 S. C., 537; 73 S. C., 525. *Memoranda on back of relay message properly ruled out:* 75 S. C., 525. *Charge as to suffering of normal person correctly stated the law:* 71 S. C., 159; 72 S. C., 411, 442, 74. *Unexplained unreasonable delay in delivery supports punitive damages:* 77 S. C., 61; 72 S. C., 264; 73 S. C., 385; 65 S. C., 99, 444.

May 27, 1909. The opinion of the Court was delivered by

Mr. Chief Justice Jones. The defendant-appellant seeks to reverse a judgment for $500 in favor of plaintiff for alleged negligent and wanton failure to deliver the following message, filed by Jeremiah Smith with defendant's agent at Conway, S. C., and addressed to the plaintiff at Lexington, S. C.:

"Daggett badly cut with saw; flesh wound; not necessarily fatal; both come."

Daggett referred to in the message was plaintiff's son. The message, as alleged, was filed with the defendant for transmission about 4 o'clock p. m. on Saturday, November 12, 1904, and was not delivered until about 10:30 o'clock a. m. on November 13, 1904, resulting in delaying plaintiff in reaching her son for about twenty-six hours, and thereby causing her to suffer great grief and mental anguish.

Appellant's first contention is that the Court erred in allowing plaintiff, after stating that she suffered great mental anguish, to further state that her "suspense was terrible," and in permitting plaintiff's husband to testify as to his wife's condition after the receipt of the telegram, "it was pretty bad; she was all to pieces; I never saw her like that before in my life." It is objected that

the testimony violated the rule stated in *Willis* v. *Tel. Co.*, 69 S. C., 537, 48 S. E., 538, excluding testimony as to the claimant's peculiar or abnormal fears and apprehensions, but we do not so hold.   There was no attempt to show that plaintiff's suspense and suffering were beyond what the average normal mother would feel in her situation, and in instructing the jury the Court was careful to apply the rule in the Willis case and restrict recovery to the suffering of an ordinary person under the circumstances.

Error is alleged in admitting evidence as to the income of the railroad and express companies at the Lexington station.   Defendant's witness, Hartley, had testified that he attended to all the business at Lexington of the railroad, express and telegraph companies, and that on Saturday, November 12th, he was very busy and in the warehouse most of the time, and had no help.   On cross-examination he testified that the work was too much for one man to do and that he ought to have had help, and was further allowed to testify as to the income of the railroad and express companies at that point as bearing upon the question of the amount of work the agent had to do.   The testimony was not wholly irrelevant, as it had some relation to the question whether the failure of defendant's agent at Lexington to receive and deliver the message on November 12th could be excused because of reasonable demands upon his time and attention by his associated employments.   On this same line defendant was allowed to show that the income from the telegraph business did not exceed ten dollars per month.   It is not reasonable to suppose that the jury may have estimated the amount of damages against the defendant by reference to the income of strangers to the suit.

It is alleged that the Court erred in not giving the jury without modification defendant's sixth request, as follows:

"A telegraph company, under the mental anguish act, is not liable for mental anguish which was merely incidental

to its failure to deliver a message, and, in an action such as this, the defendant is charged with the suffering, if any, which the failure to deliver the message may reasonably be expected to produce, when its contents are considered, not with the suffering due to a peculiar temperament, but that of an ordinary human being. And, under the mental anguish act, the plaintiff in this case can not recover for any feeling of disappointment, annoyance or vexation which she may have felt by reason of the failure to promptly deliver the message in question."

The Court charged the first sentence of the request, but refused to charge the last sentence, and instead charged as follows: "That means the failure to deliver must cause the suffering, and the test is what the jury think that a person of ordinary feeling, the usual ordinary feeling in this case; I charge you that feeling that you conclude a mother, the ordinary mother, that the ordinary mother should have under similar circumstances; you can not take the way of a person of a very excitable temperament or impulsive disposition on the one hand, or one of very callous disposition on the other; the test you go by is what, in your judgment, a person of ordinary feeling under similar circumstances, what feeling they had, or should have suffered,—suffered under similar circumstances."

It is contended that the modification was not in harmony with the construction of the statute given in *Johnson* v. *Tel. Co.*, 81 S. C., 235. The Court in that case was considering the application of the statute with respect to relatives not connected with the subject of the message by close family ties, and, therefore, not likely to sustain the mental anguish contemplated by the statute. The present case involved the mental suffering of a mother with respect to her son. Her regret or disappointment in being delayed in reaching and ministering to him may have been so keen or bitter or intense as to be properly charged as mental anguish. The charge given sufficiently covered the issue.

The appellant requested the Court to charge the jury: "That closing the telegraph office at Lexington on Saturday afternoon at °6:30 and opening next morning at 9:30 is reasonable office hours, and the company is not required by law to receive a message at Lexington between 6:30 p. m. Saturday and 9:30 a. m. Sunday." The Court modified the request by charging: "That it is for the jury to say whether the closing of the telegraph office at Lexington on Saturday afternoon at 6:30, if it was closed, and you are to say whether closed, and opening the next morning at 9:30, if opened at all, were unreasonable office hours or not, and if you do decide that they were reasonable office hours, then the telegraph company would not be required by law to receive a message at Lexington between 6:30 p. m. Saturday and 9:30 a. m. Sunday; you are to be the judges." Appellant contends that this was error on the ground that the reasonableness of office hours is a question of law for the Court, when there is no dispute as to the facts. Conceding this to be correct the Court committed no error, as there was testimony that the regular office hours at Lexington were from 7:00 a. m. to 7:00 p. m., and the Court could not assume the facts to be as declared in the request.

It is finally contended that the Court erred in submitting the question of punitive damages to the jury. While it appears that the message was promptly transmitted from Conway to Augusta, Ga., the relay office, there was no explanation whatever as to the long delay of the message at the Augusta office, from 4 o'clock p. m. Saturday to 10 a. m. Sunday morning. By many decisions in this State it has been held that a long unexplained delay in transmitting and delivering telegrams affords some evidence of a reckless or wanton disregard of duty. It is true the agent at Lexington made commendable effort to deliver the message on its receipt by him at 10:06 Sunday morning,

but this was unavailing in view of the long and unexplained delay in transmitting from the Augusta office.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.