### WILLIS v. WEST. UNION TEL. CO.

1. MENTAL SUFFERING.—TELEGRAM inquiring as to the condition of a member of one's family indicates sickness, and anxiety on account of it.

2. TELEGRAMS—NEGLIGENCE—JURY.—Whether the addressee of a telegram would have answered it, and whether negligence of telegraph company in failure to deliver a reply was proximate cause of plaintiff's suffering, are questions for jury.

3. MENTAL SUFFERING.—The statute as to mental suffering includes damages for anxiety and for negligence which prolongs anxiety, and other kinds of mental suffering.

4. EVIDENCE—TELEGRAM.—The addressee of a telegram under proper allegations may testify whether if telegram had been received he would have answered, and what.

5. DAMAGES—MENTAL SUFFERING.—Actual damages from mental anguish should be confined to such time as plaintiff should have received the telegram and the time of positive information on the subject; but such rule should not be applied to punitive damages.

6. IBID.—IBID.—EVIDENCE.—In actions for mental anguish for failure to deliver a telegram, plaintiff's statement of his particular conclusions or apprehensions from failure to receive the telegram, are not admissible.

7. REQUEST.—CIRCUIT JUDGE may waive requirement that request be read to the Court, and may accept a verbal request.

8. DAMAGES—MENTAL SUFFERING.—In action for mental anguish, jury may consider in mitigation of damages plaintiff's failure to use other means within reach to ascertain information sought.

Before J. P. CAREY, special Judge, Cherokee, June, 1903. Reversed.

Action by J. A. Willis against Western Union Telegraph Co. From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Fearons, Evans & Finley* and *J. C. Jeffries,* for appellant, cite: *Statute does not include cases of failure to relieve mental anguish:* 9 Tex., 206; 75 Tex., 26; 54 S. W., 825. *Mental anguish is to be inferred, not proved, by plaintiff's apprehensions or imagination:* 7 Allen, 118; 75 Tex., 531; 22 S. W., 866; 7 Cush., 581; 70 Tex., 243. *Plaintiff must show that claim for damages was made in sixty days:* 1 Am. R., 387; 98 Ia., 51. *As to limitation of period of mental anguish:* 25 Ency., 1 ed., 861. *Plaintiff should have used other available means to lighten the loss:* 2 Joyce on Dam., sec. 1424; 45 N. Y., 744; 83 Ala., 542; 61 Ark., 613; 83 Ga., 201; 62 Me., 209; 41 N. Y., 544; 87 Tenn., 529, 544; 15 Tex. Civ. Ap., 37; 15 Gratt., 122; 42 S. W., 119.

*Messrs. W. S. Hall, Jr.,* and *Butler & Osborne,* contra, cite: *Defendant must allege and prove that claim was not filed in time:* Code 1902, 2223; 21 Ency. P. & P., 521, 522; 26 S. C., 265; 19 S. C., 383; 2 Rich., 286; 39 S. C., 58; 65 S. C., 93.

August 13, 1904. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The plaintiff in this case recovered a verdict for $500 on account of mental anguish caused by failure to deliver a telegram.

The defendant's demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, was overruled by the Circuit Judge, and the appeal from this ruling will be first considered.

The complaint alleged, in substance, the following facts: The plaintiff, who resided in Gaffney, received a telegram from his father summoning him to Blackville, the home of his parents, on account of the extreme illness of his mother. Upon reaching Spartanburg, on his way to Blackville, plaintiff delivered to defendant for transmission a telegram in these words, directed to his father at Blackville: "Wire me at Columbia, care train No. 14, stating mother's condition." Twenty-four hours elapsed between the receipt of the message by the defendant and its delivery at Blackville. The plaintiff on reaching Columbia inquired at defendant's office for the answer he expected from his father, and suffered much mental anguish from his distress and suspense as to his mother's condition. Plaintiff's father would have sent telegram informing him of his mother's improvement and his suffering would have been thus relieved, if the message of inquiry had been delivered in time. The failure of the defendant to transmit and deliver the plaintiff's message is alleged to have been negligent, and in wanton and wilful disregard of the rights of the plaintiff.

In the demurrer, six objections were made to the complaint: "(1) There was nothing in the message itself which gave notice to the defendant of the importance of the message; (2) That the failure to deliver the said telegram promptly was not the proximate cause of plaintiff's alleged mental anguish; (3) Because, if the plaintiff suffered mental anguish, the complaint shows this to be an action for failure to relieve such mental anguish, which was set in motion from some other cause than the failure to deliver the telegram; (4) Because the complaint in reality shows this to be an action for anxiety instead of mental anguish; (5) Because the statute does not furnish a remedy to relieve mental anguish; (6) Because the entire alleged cause of action is

based upon the presumption of the father answering the telegram when he received it, and the said presumption being an uncertainty."

As to the first objection, it need only be said that a telegram inquiring as to the *condition* of a member of one's family usually indicates sickness and anxiety on account of it.

The second, third and sixth objections cannot be sustained because, under the decision in *Wallingford* v. *Telegraph Co.,* 60 S. C., 201, 38 S. E., 443, it was a question of fact for the jury whether the father would have answered the delayed telegram and relieved the mind of the plaintiff, and also whether the negligence of the defendant under such circumstances was the proximate cause of the plaintiff's suffering. See, also, *Telegraph Co.* v. *Mitchell,* 40 L. R. A., 211 (Tex.).

Our statute makes telegraph companies liable "for mental *anguish or suffering* * * * for negligence in receiving, transmitting or delivering messages." (Sec. 2223, Civil Code, 1902.) The language of the statute is too broad for the refinements suggested by the fourth and fifth objections to the complaint, between anxiety and other kinds of mental suffering, or between negligence which originates suffering and that which prolongs it. This disposes of the six grounds of appeal from the order overruling the demurrer, and also of the appeal from the refusal to grant a nonsuit.

The nine exceptions, relating to the admission of testimony and the charge of the presiding Judge, really raise four questions, which we now consider.

J. A. Willis, the plaintiff's father, testified, if he had received his son's message he would have telegraphed informing him of his mother's improvement. The complaint alleged an answer of this kind would have been sent, and as indicated above, in considering the demurrer, it was competent, under the case of *Wallingford* v. *Telegraph*

*Co., supra,* to prove this by the person from whom the answer was expected.

The eighth exception alleges error in the refusal to charge: "If you find that the plaintiff is entitled to damages, you will be restricted and limited in making up your verdict to such damages as he would be entitled to for mental anguish and suffering from the time of the arrival of the train No. 14 at Columbia, S. C., until his arrival at home at Blackville, S. C.; and if you consider him entitled to damages, such damages must be restricted wholly to the mental anguish or suffering between those times, and not for any suffering or mental anguish that he may have had by the previous receipt of the telegram from his father informing him of his mother's dangerous condition." This request was charged as to actual damages. As to punitive damages, under the allegation of wantonness and wilfulness, it is clear, if the agents of defendant at Spartanburg, or elsewhere on the line, had wilfully or wantonly failed or refused to send the message to Blackville before the plaintiff reached Columbia, the punitive damages would have reference to that wilful or wanton act and to the time of its occurrence, without respect to the time of plaintiff's arrival in Columbia. The Circuit Judge was, therefore, right in refusing to apply the request as made to punitive damages.

The next inquiry is, could the plaintiff, in testifying, state his own peculiar apprehensions and conclusions as to the condition of his mother when he failed to receive a telegram from his father in answer to his inquiry? This is a new question, upon which there is little authority. Such evidence has been held competent in Texas, but without much discussion by the Court, and the reasoning is not convincing. *Telegraph Company* v. *Adams,* 6 L. R. A., 844 (Texas); *Railway Company* v. *Miller,* 61 S. W., 978 (Texas).

In *Jones* v. *Fuller,* 19 S. C., 66, it was held competent, in a suit for breach of promise of marriage, for witnesses having peculiar knowledge of the social position, temperament, dis-

position and surroundings of the plaintiff to state to the jury ·
their estimate of the damages.    This evidence was held com-
petent from the necessity of the case.    The Court says: "It
is difficult to conceive how it would have been possible for
these witnesses to state all the various facts, or reproduce
in language the condition of things, upon which they based
their estimate, so as to make the same palpable to the minds
of the jury.    How could they express in language the degree
of sensibility of the lady, or the numerous other impalpable
things which went to make up their estimate of the amount
of damages which she had sustained?    We think it was just
one of those cases where, in the language of that eminent
author, Wharton, the 'facts can be best · expressed by the
damage they cause.' "    This reasoning does not cover the
case now under consideration.    In breach of promise actions
the individual temperament and disposition of the plaintiff
enters into the estimate of damages, because the defendant
may well be presumed to have acquaintance with the peculiar
sensibility of his fiancee.    He is hence charged with know-
ledge of peculiar suffering.    A telegraph company ordinarily
has no such knowledge, and is chargeable only with · know-
ledge of the sensibility of people in general in the country
in which its business is conducted.    The conclusion as to
suffering and damages is, therefore, one which the jury can
draw; and, as is said in the opinion of *Jones* v. *Fuller, supra,*
in that event the jury must be left to draw the conclusion.
In addition, it may be remarked that while the authority of
*Jones* v. *Fuller* is fully recognized in suits for breach of
promise, it will hardly be contended it should be extended
to other actions except upon the clearest necessity.

Our statute allowing recovery in telegraph cases for mental
suffering provides no rule of evidence for its ascertainment.
In the consideration it should be borne in mind that this stat-
ute provides for the recovery of damages to which no legal
standard of measurement can be applied more definite than
the common sense of the jury, regulated by the discretion of
the Circuit Judge to grant new trials, when it seems to him

common sense was not applied by the jury.  If wisely administered by the courts, the law will tend to quicken the sense of responsibility of those charged with transmitting intelligence by telegraph, and to give relief to real victims of negligence.  On the other hand, if not so administered, it is easy to see how the statute may be perverted to purposes of speculation and injustice.  It is impossible to draw legal lines and diagrams including all that should be regarded "mental anguish and suffering," and excluding all that should not come within the meaning of the statute.  It is safe, however, to say the statute does not mean that one morbidly nervous or abnormally gloomy should have a recovery estimated on his statement that he suffered great anguish on account of the failure to deliver a telegram, which would have brought the average man no suffering, and but trifling annoyance.  Certainly this would be so in the absence of proof that the telegraph company knew of the idiosyncrasy of the person making the claim.  The company is charged with the suffering which the failure to deliver the telegram may reasonably be expected to produce when its contents are considered—not the suffering due to peculiar temperament, but that of the ordinary human being.  It is not intended by the statute that the hopeful should have small verdicts and the despondent large ones.

The safe and just rule is to exclude the evidence of claimant's peculiar fears, apprehensions and conclusions, and leave it to the jury, after hearing all the facts, to say, as men of common sense, with knowledge and experience of ordinary human sensibility, what mental anguish or suffering, if any, would result under all the circumstances, and the amount that should be allowed for it.

Actions for slander furnish a close analogy.  "The plaintiff is entitled to recover as general damages for the injury to his feelings which the libel or slander of the defendant has caused, and the mental suffering or anguish which he has endured as a consequence thereof."  18 A. & E. Ency. Law, 1083.  Yet in such actions it is not for the witnesses or the

plaintiff to say what was the meaning and effect of the words used, but such meaning must be left to the jury, under all the circumstances.    18 A. & E. Ency. Law, 1078.    As said by Chief Justice Shaw, in *Snell* v. *Snow,* 46 Am. Dec., 730 (Mass.), to hold otherwise, "would be to make the defendant's liability depend, not on his own malicious intent and purpose in using the language, which might be quite innocent and free from blame, but upon the misconception or morbid imagination of the person in whose hearing they were spoken."

In discussing the same principle in a suit for a wrongful attachment, Justice Stone says, in *City National Bank* v. *Jeffries,* 73 Ala., 192: "In the present case, the plaintiff was permitted to testify, against the objection and exception of defendants, that by the issue and levy of the attachment he 'was much distressed and harrassed in body and mind;' that he 'was almost crazy.'    He was also permitted to prove by other witnesses the apparent distress he suffered in consequence of the attachments.    Such testimony as this can be legal only on the theory that for wrongs, identical in nature and degree, the man of delicate organism and acute sensibilities is entitled to greater damages than one of a more stoical nature.    We cannot agree to this.    That one who has been wrongfully and vexatiously attacked may recover for his wounded feelings, cannot be denied.    But such suffering is not the subject of direct proof.    It is an inference to be drawn by the jury from the manner and causelessness of the wrong.    The nervous organization of the sufferer cannot enter into the account.    Furthermore, such test might operate very unjustly.    The loss of available means, and of commercial credit, might greatly distress one, while wounded pride, or impaired social standing, would equally oppress another.    The Court erred in admitting this proof.    *Herring* v. *Skaggs,* 62 Ala., 180; *Sledge* v. *Scott,* 56 Ala., 292."

The plaintiff's statement of his particular conclusions and apprehensions from failure to receive the telegram should have been excluded.

The defendant, by his tenth exception, asks to have the judgment of the Circuit Court reversed, "because his Honor erred in failing to charge defendant's verbal request to charge that the jury might consider in mitigation of damages the plaintiff's failure to use other means within his reach." The respondent insists this exception cannot be considered, because the request was verbal, and, therefore, did not comply with Rule 11 of the Circuit Court. It is said in *Herskovitz* v. *Baird,* 59 S. C., 307, 37 S. E., 922: "As the rule was intended mainly for the benefit of the Circuit Judge, there is no reason why he should not dispense with that provision requiring requests to be read to the Court." Here the Circuit Judge did not see fit to enforce the rule, and the exception must be considered. It is due to the presiding Judge to say he held the request to be a sound legal proposition, but did not then give it to the jury because he considered he had already practically so charged. In this the Circuit Judge fell into an error by inadvertence. The general statement that the jury should take into consideration all the facts and circumstances in estimating damages, cannot be regarded as covering this specific request, and there is nothing in the charge on the subject more specific than the general instruction.

There was evidence tending to prove that the plaintiff had time and opportunity at Columbia and Branchville to inquire as to his mother's condition both by telegraph and telephone, but made no effort to do so. In view of this evidence, the defendant was entitled to the instruction requested, that the jury might consider in mitigation of damages the failure of plaintiff to use other means of communication within his reach. There seems to be a general concurrence of judicial opinion on the subject. 27 A. & E. Ency. Law, 1033.

The record does not show that any motion was made for a new trial, and, therefore, exceptions as to its refusal cannot be considered.

The third and tenth exceptions must be sustained, and a new trial ordered. All the other exceptions are overruled.

The judgment of this Court is, that the judgment of the Circuit Court be reversed and the case remanded for a new trial.