6525

DOSTER v. WESTERN UNION TEL. CO.

1. EVIDENCE—TELEGRAPH COMPANIES.—Under an allegation that but for the negligence in delivery of a telegram it would have been received and promptly acted upon, it is admissible to show if message had been promptly sent to parties who were to communicate it to addressee, they would have promptly transmitted it to him.

2. IBID.—That grandfather was unusually fond of his grandchild is not proof of abnormal temperament.

3. IBID.—TELEGRAPH COMPANIES.—On the issue of wilfulness or wantonness in delay in delivery of a telegram it is proper to show the office was a small one, receipts small, and in order to make it self-sustaining it was necessary to unite the offices of railroad, express and telegraph agent.

4. WILFULNESS—JURY—TELEGRAPH COMPANIES.—Failure to ·hear a call on Sunday during office hours, caused by working in the freight office, occasioned by the absence of assistant on account of sickness in his family and handing an important message to a casual passer who agreed to deliver it after going to the postoffice, is evidence for the jury on the issue of wilfulness.

5. JURY—TELEGRAPH COMPANIES—NEGLIGENCE.—It is for jury to say if addressee of a telegram unreasonably delayed his start to the funeral by waiting after receiving the message about two hours to get his dinner and feed his animal.

6. TELEGRAPH COMPANIES—PUNITIVE DAMAGES.—Under the facts in this case a verdict for $250 "punitive damages" sustained as the result of a wilful breach of duty in which jury had power to award damages and characterize them as punitive, and also as including a finding of whatever is legally essential as a basis of punitive damages.
MR. JUSTICE WOODS *dissents.*

Before KLUGH, J., Lancaster, March, 1905.    Affirmed.

Action by Robert W. Doster against Western Union Telegraph Co.  From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Fearons, Evans & Finley* and *Williams & Williams,* for appellant.  *Messrs. Williams & Williams* cite: *Evidence of Hall and Culp improperly admitted: Bank*

v. *Tel. Co.,* 30 Ohio; 72 S. C., 116. *Evidence of plaintiff as to unusual fondness for grandchild not competent:* 73 S. C., 523; 69 S. C., 31. *Nonsuit should have been granted on cause of action for wilfulness:* 72 S. C., 726; 73 S. C., 523. *Negligence alleged was not proximate cause of failure to attend funeral:* 70 S. C., 418; 72 S. C., 116; 73 S. C., 221, 525; *Higdon* v. *Tel. Co.,* 44 S. E. R. *As to proof of income at small office:* 8 Cen. L. J., 445. *In absence of finding of actual damages a verdict for punitive damages was precluded:* 105 Cal., 680; 70 Ill., 736; 34 S. W., 762; 72 Ill., 133, 540; 73 Ill., 561; 62 Mo. App., 119; 75 Tex., 1; 16 Wis., 485; 73 Fed. R.. 196; 357 Sup. Ct., 118; 66 Texas, 588; 21 Ohio, 191; 50 Wis., 645; 67 Me., 517; 60 S. C., 72; *Oliver* v. *R. R.,* 65 S. C.

*Messrs. Greene & Hines,* contra, cite: *What Hall and Culp would have done properly admitted:* 69 S. C., 534. *Jury could infer wilfulness from long delay in delivering message:* 72 S. C., 256; 65 S. C., 99; 73 S. C., 379; 65 S. C., 444. *Whether failure to deliver was proximate cause of failure to attend funeral is for jury:* 60 S. C., 213; 54 S. C., 498; 65 S. C., 430; 68 S. C., 64; 62 S. C., 130; 25 S. C., 128. *Not necessary for jury to find actual damages to make verdict for punitive damages valid:* 69 S. C., 545; 70 S. C., 83, 424; 65 S. C., 1, 127; 60 S. C., 56; 66 S. C., 542; 72 S. C., 263; 69 S. C., 327, 115; 57 S. C., 234; 5 Ency., 5.

April 24, 1907. The opinion of the Court was delivered by

Mr. Justice Woods. This action was brought by the plaintiff, Robert W. Doster, to recover fifteen hundred dollars damages for the alleged wilful, careless and reckless delay of defendant telegraph company in transmitting the following message received at its office at Monroe, N. C., from John Richardson, plaintiff's son-in-law, on July the 22d, 1905, directed to Lee Hall, Fort Mill, S. C.: "Phone Robert Doster; baby died this evening come." The mes-

sage was filed at Monroe office at 7:20 o'clock, and eight minutes later was transmitted to Charlotte, to be sent to Fort Mill, there being no direct line to that place. The Fort Mill office closed at 7:30 o'clock P. M., except on Sundays, when the office hours were from 8 to 10 in the morning and 4 to 6 in the evening. The Charlotte office, immediately upon receipt of the message, tried to get Fort Mill, but failed. On the next day, Sunday, as appeared from the record of the Charlotte office, Charlotte called Fort Mill at 8 A. M.; 8:35 A. M.; 8:41 A. M.; 10 A. M.; 10:20 A. M.; 10:50 A. M.; and finally got the message through at 11:09 A. M. The business of the Fort Mill office being small, the telegraph agent was also agent for the railroad and express companies. On the morning in question, after attending to his duties connected with two passenger trains which arrived between 8 and 10 o'clock, the agent repaired to the freight office, about forty yards across the railroad, in another building, in order to do some clerical work, and thus failed to hear the calls from Charlotte. The message was delivered to Hall at 11:20. Doster lived about six miles from Fort Mill, and in order to reach him, Hall testified that at 12:05, as soon as the phone office opened, he phoned the message to Culp, Doster not having a phone, who replied that Doster's son was at his house and would carry it at once. Culp testified that it was 12:30 when he received the message; that he immediately put Doster's son on a mule to carry the message to his father, who lived about a mile and a half away. Doster testified that it was some time after 12 o'clock when he received the message; that as soon as he could eat, feed his mule, and get ready, he started for Monroe, going by Culp's to make sure Monroe was the place to which he was called; that although he drove very rapidly and the funeral was put off as long as possible, he arrived too late to attend the burial of his grandchild. On account of his inability to attend the funeral and to be with his daughter, who was sick, plaintiff

alleged that he suffered great mental anguish. The case was heard before Judge Klugh at the March, 1905, term of Court, and resulted in a verdict of two hundred and fifty dollars "punitive damages" for the plaintiff. A new trial was refused and defendant appeals.

In the first and second exceptions, the defendant complains of error in allowing Lee Hall, the person to whom the telegram was sent for transmission over the telephone to plaintiff, to testify that he would have phoned promptly on receipt of the message; and in allowing the witness, Culp, to whom Hall telephoned the message to be communicated to plaintiff, that he would have sent it to the plaintiff immediately. The complaint alleges: "If said telegram had been delivered to plaintiff's agent, the said Lee Hall, within the time it should have been delivered to him, plaintiff would have received it in ample time to have attended the funeral of his grandchild in Monroe, N. C., on July 23d, 1905, but that although he started for the said city of Monroe as soon as he received said message, he did not arrive there until after his grandchild was buried." Testimony of this kind in support of allegations that but for the negligence of the defendant the message would have been received and promptly acted upon is admissible from necessity; for ordinarily there is no other way to prove the negligence of the defendant resulted in damage.

The third exception rests on the admission of testimony from plaintiff that he was fond of his grandchildren. This was not objectionable as proof of abnormal sensibility or peculiar individual temperament unknown to defendant, under the case of *Willis* v. *Tel. Co.*, 69 S. C., 531, 48 S. E., 538. On the contrary, it was nothing more than evidence that the plaintiff was a normal man. *Roberts* v. *Tel. Co.*, 73 S. C., 523, 53 S. E., 985.

We think the Circuit Judge erred in rejecting evidence as to the amount of the receipts at the Fort Mill office, because the small business would be a proper factor to enter into

the consideration of the jury in determining whether negligence or wilfulness or wantonness was to be inferred from the delay. These are relative terms. Where the income at any office is so small that it can be made self-supporting only by uniting in one person the duties of telegraph operator and railroad and express agent, it is reasonable and fair that the jury should consider whether the agent kept the proper balance of diligence in the discharge of the three lines of duty devolving upon him, or gave one undue attention to the neglect of another. This is nothing more than the application of the common sense rule that there can never be a conflict of duty; and in deciding whether duty to one has been discharged, duties to others must be taken into account. But the exclusion of this evidence was not material because the agent, Whitlock, was allowed to state fully all the requirements of his three official positions.

While the case is a close one on the point of wilfulness or wantonness, we think there was no error in refusing the motion for a nonsuit as to that cause of action. The Fort Mill office hours of the defendant on Sunday were from 8 to 10 A. M. and from 4 to 6 P. M. The operator at Charlotte called Fort Mill many times after that office was opened for business, and it was not until nine minutes after eleven that the call was answered and the message taken by the Fort Mill operator. The residence of Hall, the addressee, was about five hundred yards from the office; and the operator, instead of recognizing the urgent importance of the message and delivering it himself or sending it by a messenger, entrusted it to a casual passer-by, who promised to take it after he had been to the postoffice. The operator thus explains his absence from the office when the Charlotte office was calling, his assistant had been suddenly called away by sickness in his family, and it was necessary for him to work on Sunday in the freight office to catch up with his work, some of the time being occupied in attending to duties connected with passen-

ger trains. He also said that not more than three Sunday messages were received at Fort Mill in a year. Nevertheless, we think the frequent unanswered calls from the Charlotte office, and the casual method taken to send the addressee a message of such obvious importance, was some evidence from which the jury might infer the operator at Fort Mill was giving little, if any, attention to his duty to look out for, receive, and deliver telegrams during his office hours, and was indifferent to such duty. We are, therefore, unwilling to say there was no evidence of wilful or wanton disregard of duty.

The defendant next contends, if Hall had telephoned the plaintiff promptly after the message reached him, and if the plaintiff had started to the funeral as soon as practicable, even after he received the message, he would have arrived in ample time to attend the services, and no damage would have been done. On this ground defendant moved for a nonsuit on the whole case, but we think the motion was properly refused. Lee Hall did not receive the message until after eleven o'clock, and he testified he telephoned as soon as the office was opened. The plaintiff, it is true, waited about two hours to get dinner and to feed his mule before starting on his journey. While it was his duty to use reasonable diligence to prevent any damage to himself, and if he could not prevent damage altogether, to minimize it, it was for the jury and not for the Court to say whether under the circumstances the plaintiff unreasonably delayed his start.

Assuming the income of the Fort Mill office was so small as to justify the uniting of the duties of a telegraph operator and a railroad agent in the same person it does not follow the Circuit Judge erred in refusing to charge: "If such agent is called beyond the sound of his telegraph instrument, in the discharge of his duties to the railroad company. and fails on that account to hear another calling him, that neither the agent nor the telegraph company is guilty of negligence." For as already said, the jury's province is to

say whether the agent was negligent or reckless in not keeping the proper balance of diligence in the discharge of the duties of the several positions. .

The next question is whether a verdict for punitive damages only can be sustained. In *Watts* v. *Railroad Company,* 60 S. C., 67, 72, 38 S. E., 240, the Court said: "Appellant properly admits that exemplary or punitive damages may be awarded in this State for injuries wilfully inflicted, but contends that such damages can only be awarded to vindicate the right of the plaintiff, and only in case actual injury has been inflicted, and that in the absence of actual injury to plaintiff, such damages cannot be given merely in punishment for a wrong to the public. The appellant is manifestly correct in this view; since, if no actual injury has been inflicted on the plaintiff, he has no cause of action upon which any damage may be awarded." In *Arial* v. *Tel. Co.,* 70 S. C., 418, 424, 50 S. E., 6, this language is used: "Punitive damages are recoverable when there has been an intentional invasion of the plaintiff's right, although the damages sustained by him are nominal. If this was not the law, a wrongdoer would in many cases escape pecuniary punishment for his wilful or reckless conduct." The rule to be deduced from these cases is that some actual damages resulting from the tort must be made out before there can be a rcovery for punitive damages, but it is sufficient even if the actual damages are so small as to fall under the designation of nominal damages.

Applying this rule that punitive damages cannot be recovered as a result of violation of duty unaccompanied by some actual damages, the writer of this opinion thinks this verdict should not stand. The evidence made a serious question whether the plaintiff did not have ample time to make the journey and attend the funeral of his grandchild, notwithstanding the delay in the delivery of the telegram. There was, therefore, ground for the jury to conclude the delay in delivery of the telegram was not the proximate cause of the plaintiff's failure to attend the funeral and that, therefore,

the plaintiff suffered no actual damages. The issues as to actual and punitive damages both being clearly presented in the charge, the verdict for two hundred and fifty dollars "punitive damages" is a clear expression that no actual damages were included in the verdict. As there can be no recovery for punitive damages without actual damages, it follows the verdict should have been set aside. It has been held that actual damages may be recovered under allegations and proof of a wilful tort. *Chiles* v. *Railway,* 69 S. C., 327, 48 S. E., 252, but it has also been held many times that actual and punitive damages are entirely distinct in their nature, and I am at a loss to understand how compensatory damages can be regarded comprehended in a finding for punitive damages.

A majority of the Court, however, are of the opinion that the judgment should be affirmed. In their view, the verdict is responsive to the cause of action based upon allegations of injury as the result of a wilful breach of duty, in which the jury had power to award damages, and characterize them punitive. They think further the verdict does not negative the idea that there was some actual injury however slight, but negatives the idea that the injury was done negligently and inadvertently, and declares that it was done wilfully, hence the character of the damages awarded could be punitive instead of strictly compensatory, and that the jury may also have thought that the actual injury was not so substantial as to require expression in their verdict. The majority further think, inasmuch as it has been held that there was evidence sufficient to require that the matter of punitive damages should be submitted to the jury, the verdict upon such issue involves a finding of whatever is legally essential as a basis for punitive damages.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.