### 9417

### METTS *ET AL.* v. CHARLESTON THEATER CO.

#### (89 S. E. 389.)

1. THEATERS AND SHOWS—EJECTING PATRON—JURY QUESTION.—In an action for damages for wrongful ejectment from theater, question whether the person who ordered plaintiff's expulsion was acting manager of the theater *held* a question for the jury.

2. THEATERS AND SHOWS—WRONGFUL EJECTMENT—LIABILITY OF THEATER OWNER—SUFFICIENCY OF EVIDENCE.—Evidence *held* sufficient to sustain a verdict for actual and punitive damages for wrongful ejectment of plaintiff from theater.

3. THEATERS AND SHOWS — WRONGFUL EJECTMENT — QUESTION FOR JURY.—Whether a uniformed policeman, escorting plaintiff from her seat in a theater, was acting in an official capacity in ejecting her *held* a jury question.

4. THEATERS AND SHOWS—WRONGFUL EJECTMENT—QUESTION FOR JURY.—Whether the plaintiff suffered from nervous shock as a direct

result and consequence of her wrongful ejectment from theater *held* a question for the jury.

5. THEATERS AND SHOWS—WRONGFUL EJECTMENT—QUESTION FOR JURY. —Whether unnecessary force was used in ejecting plaintiff from theater *held a* jury question.

Before SEASE, J., Charleston,. May, 1915.   Affirmed.

Action by Annie A. Metts and another against the Charleston Theater Company.  Judgment for plaintiffs, and defendant appeals.

*Messrs. Nathans & Sinkler,* for appellant, cite: *As to punitive damages:* 213 Pa. 20; 1 L. R. A. (N. S.) 1184; 125 S. W. 255; 13 Mees. & W. 38; 183 N. Y. 250; and submit: *A theater ticket is a revocable license.  When an unintentional mistake in the sale of tickets is made the defendant had the right to correct the mistake. as soon·as discovered and give the seats to the parties rightfully purchasing.   It is the duty of the wrongful claimant to vacate the seats quietly when requested so to do and have other seats in lieu thereof.   Upon the refusal of the wrongful claimant to vacate the seats the theater company would have a right to use only so much force as was necessary to expel such claimant from his seat.   If such wrongful claimant, after refusal to vacate the seat, was moved with no more force than was necessary, the humiliation suffered for such removal is not a claim for punitive damages.*

*Messrs. Bryan & Bryan* and *Thomas P. Stoney,* for respondent, submit: *The evidence and all. the circumstances show: First, gross negligence on the part of the defendant in selling these ladies wrong tickets, passing them in at the*

FOOTNOTE.—Rights of purchaser of ticket of admission to place of amusement, see notes in 5 A. & E. Ann. Cas. 346, 12 *Ib.* 422, 30 A. & E. Ann. Cas. 1913e, 560, 1 L. R. A. (N. S.) 1184, 43 L. R. A. (N. S.) 961; humiliation as an element of damage for exclusion from place of amusement, see notes in 54 L. R. A. (N. S.) 1915b, 1119.

gate and putting them in these seats. Secondly, in suspecting them and charging them with beating the show as crooks and sneaks. And, thirdly, on that ground, falsely passing bogus tickets, arresting and ejecting them. And, fourthly, the manager and policeman when caught, flagrante delicto, they endeavored to tell a story, on its face, incredible and which the jury, as the only tribunal to pass upon the credibility of witnesses, has passed upon. The evidence further shows that after the insult, arrest and ejection of Mrs. Metts in a state of collapse, hysterical and suffering from mortification and shame and horror and terror, Mrs. Metts called Miss Muller, the ticket agent, to explain the mistake that she, Miss Muller, had made, and when Miss Muller explained the mistake all of the wrongs had already been accomplished and she was in a state of collapse, nervous prostration, causing sleeplessness and mortification and shame for a long time thereafter. Again, to an insulted lady, having been accused by this manager as a crook and as a sneak, it was a further insult from Sagerson, the manager, to offer to shake hands with her, revealing his contempt for her, and also his thought, that she had lost all self-respect and would be simply the toy of his malice, and that six tickets offered would redress these shameless wrongs and restore this insulted and abused lady to her calm and composure. And cite: 94 S. C. 287.

June 30, 1916.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

There is testimony that the plaintiff, Mrs. Metts, desired to attend and take with her four lady friends to a theatrical performance in the city of Charleston called "Freckles." She called the office of the theater company to know when she could purchase the tickets. She was told that while the play, Freckles, was to be given Monday, the tickets would

be on sale on Friday.   On Friday she could not go in person, but sent her friend, Miss Arnold, to purchase the tickets for her.   Miss Arnold went to the office and called for the five tickets to Freckles, and paid for them.   The tickets delivered to Miss Arnold were for five seats in the balcony in row D.   It appears that there was a play on Saturday called "Spring Maid;" that the ticket seller by inadvertence gave to Miss Arnold the Spring Maid tickets instead of the tickets for Freckles.   It was a simple act of inadvertence. A copy of the ticket is not in the "case," but it does appear that the tickets contained only the location of the seats and a performance number that showed only to the theater company for what play it was intended.   That Mrs. Metts did not know and that there was no reasonable way for her to ascertain that a mistake had been made.   Mrs. Metts found that one of her party would be late, and gave her one of the tickets, and Mrs. Metts and her three other friends went together to see Freckles.   The tickets were accepted at the door, and the four coupons torn off and delivered to Mrs. Metts, who presented them to the usher.   The usher escorted the party to row D, and pointed out or.let down the seats.   There were only three vacant seats.   Three of the ladies took their seats and left one lady standing in the aisle.   The usher immediately, or in a few minutes, inquired why one lady was standing, and was informed that, while five seats had been purchased, only three were available. One lady was without a seat, and another, expected soon, would be without a seat when she came.   That the usher said there was some mistake, and he would investigate the matter.   This he seems not to have done.   Miss Arnold, who had conducted the actual purchase, was standing, and went to the ticket office and secured another seat for herself and one for the other lady, and these two seats pass out of the case.   Mrs. Metts and her two friends continued to occupy their seats until the close of the first act, when Mr. Hilton, a policeman, with his wife and her sister, produced

tickets calling for the seats occupied by Mrs. Metts and her two friends.   The usher went to Mrs. Metts and demanded that she surrender her seats, as they were claimed by others. This Mrs. Metts declined to do.   He went off, and then Mr. Hilton, in full uniform of a policeman, came up and demanded that she surrender these seats, as they had been assigned to others.   There is nothing in the case to show that he revealed the fact that he and his party were the claimants.   Mrs. Metts then got up and left.   She claims that both the usher and the policeman were brusque and insulting in their manner, that the policeman tapped her on the arm to secure her attention, and that she went out of the theater under arrest.   Mr. Hilton claims that he acted under the direction of the acting manager.

There was a conflict of testimony as to who was acting manager of the theater that afternoon.   Mr. Whiting was the regular manager of the theater, but he was absent.   Mr. Whiting says the doorkeeper and the ticket seller (a young lady) were in charge.   The doorkeeper said he was not in charge, and the ticket seller was in the box office engaged in selling tickets.   The plaintiff's witnesses claim that the manager of Freckles Company was acting theater manager, and it was from him that Mr. Hilton claimed to have received his instructions to oust Mrs. Metts and her party and put his own party in possession.   This was a question for the jury.

1. The defendant moved for a nonsuit, for the direction of a verdict and for a new trial on the ground that there was no evidence to sustain a verdict for the plaintiff, either for actual or punitive damages.   The evidence is abundant.   Mrs. Metts bought, paid for, and was put in actual possession of the three seats in controversy.   It is true her evidence of her right to those seats was defective.   There is no testimony in the case to show that the theater company through its authorized agent did not intend to sell Mrs. Metts the identical seats of which

she was in possession, nor is there any evidence of their intention to rescind that contract. The right, therefore, of the theater company to rescind a contract of sale of seats is not in question, and no authorities on that subject are applicable. When Mr. Hilton got there and found that the actual possession was in another, it was incumbent upon him to show a previous contract, and there was no attempt to show that he had made a previous contract. The ticket seller, Miss Muller, testified with admirable frankness as to her part in the transaction, and if the only thing that was wrong was the mistake that she made, there would probably have been no trouble. The usher, whose duty it was to seat Mrs. Metts and her party, knew time enough before there was an adverse demand for Mrs. Metts' seats that the mistake had been made, and the record does not show that he made any effort to avoid the unpleasant consequences. If the jury found that the acting manager sent a uniformed policeman to eject Mrs. Metts from her seat, they might have found, not only actual, but punitive, damages. This is no reflection on the office of the policeman. They may be an escort of honor, a help to the helpless, or the arrestor of violators of the law. In which capacity he escorted Mrs. Metts down the aisle was to be determined by the surrounding circumstances. If the jury thought Mrs. Metts was being ejected and carried from the hall as a malefactor, they had the right to give damages. There was no evidence that Mrs. Metts was offered other seats until after she left or had been expelled from the hall. She did not accept the tickets.

2. It was for the jury to say whether or not the nervous shock, of which there was testimony, did result or not, and whether, if it did, it was the natural consequence of her treatment.

3. As to whether more force was used than was necessary was a question for the jury.

The exceptions are overruled, and the judgment affirmed.