### 10747

#### BOUKNIGHT v. LESTER
(Two Cases)
(112 S. E. 274)

1. THEATRES AND SHOWS—IN ACTION FOR CAUSING PATRONS TO LEAVE THEATRE, DEFENDANT NOT ENTITLED TO DIRECTED VERDICT.—Where a husband and wife left a theatre at the request of the manager because one of the tickets upon which they had obtained admission had been purchased by the husband the previous week, and under

a rule of the theatre tickets were honored only on the day of their purchase, in separate actions against the proprietor motions to direct verdicts for defendant were properly refused.

2. THEATRES AND SHOWS—WHERE BUYER'S ATTENTION NOT CALLED TO RULE THAT TICKET WAS VALID ONLY ON DAY OF PURCHASE NOT BOUND BY IT.—Where the attention of a buyer of a moving picture ticket was not called to the rule of the theatre that tickets were not honored except on the day of their purchase, and the price was not refunded, the buyer was entitled to use the ticket at any time. (Per Watts, J., and Gary, C. J.)

3. TRIAL—IN ACTION FOR WRONGFUL EJECTMENT OF PATRONS WHERE JURY DISREGARDED INSTRUCTIONS, VERDICT SET ASIDE.—In separate actions tried together by husband and wife for wrongful ejectment from a theatre where the husband purchased and handled the tickets, and the Court instructed the jury that one of the tickets was good and the other was bad, the jury having returned verdicts for both plaintiffs, the verdict for the husband should be set aside. (Per Watts, J., and Gary, C. J.)

Before WHALEY, J., County Court, Richland, December, 1920. Judgment for Alma G. Bouknight affirmed; for J. T. Bouknight, reversed.

Two actions by Alma G. Bouknight and J. T. Bouknight against L. T. Lester. Judgment for both plaintiffs and defendant appeals.

The eighth exception was as follows:

8. In that the trial Court was in error in permitting both plaintiffs to testify over objection of defendant's counsel as to their injured feelings and humiliation, such testimony being not only a conclusion, but being improper to submit to a jury as to how the alleged acts might have affected these plaintiffs. The question was not how the alleged acts might have affected two single individuals, but the jury should have been left to determine whether the acts complained of would have humiliated or embarrassed the ordinary person who might have entered the theatre in question, and the plaintiffs should not have been allowed to express any opinion or give any conclusions as to how the alleged acts affected them individually. The trial Court was in error in so finding and holding.

*Messrs. Thomas & Lumpkin,* for appellant, cite: *Admission of testimony by plaintiffs as to injured feelings and effect on them personally was error*: 69 S. C., 535; 57 S. C., 330; 62 So., 404; L. R. A. 1915-B., 1119. *Theatre ticket is a revocable license*: 13 M. & W., 838; 71 Am. Dec., 745; 79 Am. Dec., 717; 12 Mo. App., 141; 52 Am. Rep., 698; 73 Pac., 1050; 21 Enc. Pl. & Prac., 647; L. R. A. 1916-E., 250; 189 N. Y., 180; 1 L. R. A. (N. S.) 1188; 38 L. R. A. (N. S.) 204. *No recovery for mental suffering without bodily injury*: 69 S. C., 531; 90 S. C., 513; 57 S. C., 331; 185 S. W., 692.

*Messrs. J. S. Verner, A. W. Holman and A. F. Spigner,* for respondents, cite: *Plaintiffs at least entitled to price of tickets and directed verdict for defendant would have been improper*: 75 S. C., 74. *Humiliation and embarrassment should have been covered by request to charge*: 113 S. C., 86. *Sufficient evidence of invasion of plaintiffs' rights*: 105 S. C., 19; 54 L. R. A. (N. S.) 1119; 36 N. Y. Supp., 949; 32 L. R. A. (N. S.) 206; 10 Ann. Cas., 722; 108 S. C., 151; Sedg. Damages (8th Ed.) 67.

November 4, 1921.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an appeal from judgments entered in County Court for Richland County. The two cases were tried together, and the jury rendered a verdict in each case for $500.00 actual damages. At the close of the evidence a motion was made for a directed verdict by the defendant, which was refused. After verdicts were rendered a motion for a new trial was made, which was refused.

The exceptions are 11. The first seven exceptions complain of error in not directing a verdict in favor of the defendant on the whole case. These exceptions are overruled. There was sufficient evidence to carry

the case to the jury. His Honor in his charge was more favorable to the defendant than defendant was entitled to have charged. His Honor charged that the rule made by the defendant was a reasonable one, that a ticket presented on the day other than called for on the ticket was bad, and that the holder was not entitled to have it honored.

2 The defendant had the right to make any reasonable rule for the governance of his business, but when he was dealing with the public it was his duty to call the attention of the public to any special rule or regulation that he had adopted in order to bind them. When he sold the ticket to Bouknight, it was the duty of the seller to call the buyer's attention to a special rule or regulation adopted; otherwise the buyer could use the ticket at any time, unless refunded.

3 But the jury was bound to take the law as charged by his Honor. He charged the jury that one ticket was bad and the other good. It was one transaction, the plaintiffs were husband and wife, the husband purchased the tickets, and it must be presumed he was in possession of the tickets when they entered and he delivered them to the doorkeeper. In his Honor's charge, that one ticket was good and the other bad, the jury was not justified in finding a verdict for each for $500.00. Under his Honor's charge one was there on a void ticket, unlawfully there subject to being asked to get out. We do not see that the exceptions should be sustained, but we do think his Honor was in error in not setting aside one verdict, for it was not in accordance with his charge, and it is the duty of the jury to take the law as charged by the Judge.

Inasmuch as the record discloses that the husband purchased and handled the tickets, the judgment obtained by him is reversed, and the judgment rendered in favor of Alma G. Bouknight is affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE FRASER concur.

MR. JUSTICE FRASER concurs in the result under *Mills v. Charleston Theatre Co.,* 105 S. C., 19; 89 S. E., 389.

MR. JUSTICE COTHRAN (dissenting): J. T. Bouknight and Alma G. Bouknight, husband and wife, brought separate actions against the defendant, L. T. Lester, the proprietor of a moving picture theatre, for $2,500.00 damages in each case, by reason of the alleged negligence and willful conduct of the defendant in ejecting them from the theatre. The two cases were tried together in the County Court of Richland County, and resulted in verdicts of $500.00 each in favor of the plaintiffs.

The circumstances of the ejection were as follows: On September 4, 1920, the plaintiff, J. T. Bouknight, bought a ticket which entitled him to enter the defendant's theatre. For some reason he did not use the ticket on the day of its purchase. A week later, on September 11, 1920, he escorted his wife to the theatre, and at the ticket booth bought another ticket. He presented both tickets to the ticket taker at the door. He testified that the ticket taker, a small boy, took up both tickets and allowed them to enter the theatre. Mrs. Bouknight testifies that the boy told them: "Your tickets are not dated right; they are not any good." They paid no attention to the protest, and entered the theatre, taking seats toward the rear. The boy with the tickets hunted up the manager, a Mr. Moore, and, not finding him, went a few doors below to another theatre under the defendant's management, and related the circumstances to the manager of that theatre, a Mr. Mott. Mott and the boy returned to the theatre, and Mott asked that the plaintiff be pointed out, which the boy did. Mott approached Bouknight where he and his wife were seated. It is not contended by either of the plaintiffs that Mott did anything more than assert that the tickets were not good,

and that they must buy new ones or leave the theatre. It is hardly probable that with the two tickets in his hand, one bad and the other perfectly good, he would have stated that both were bad, but such is the testimony of both of the plaintiffs, and so far as the motion for a directed verdict is concerned must be assumed as true. Mott made no effort physically to eject the plaintiffs, but turned and went out; the plaintiffs followed. The defendant claimed that his rule was not to honor a ticket presented upon a later day after its purchase, and that he had issued such instructions to the employees.

At the close of all the testimony the defendant moved for a directed verdict in each case substantially upon the following grounds: (1) That the defendant exercised his legal right before the plaintiffs entered the theatre, and after they had entered and taken their seats, to revoke the license evidenced by the tickets, in a proper manner; (2) that the revocation was unaccompanied by word or act on the part of the defendant, calculated in law to humiliate or embarrass, and in the absence of bodily injury constituted no basis for damages. The motion was refused.

The trial Judge charged the jury, in substance, that the proprietor of a theatre, operating a private business, has the right to adopt such regulations as he may deem reasonable for the conduct of his business; that he can allow or refuse admission to any one; that after the sale of a ticket he has the right to revoke the license evidenced by it, even when the ticket is valid and contravenes no regulation of his, up to the time that the purchaser presents himself for admission; that that is the point where the right of revocation ends; that the purchaser is bound to respect the revocation, and has no claim for damages beyond the price of the ticket as upon a breach of the contract, but that, if the proprietor allows a person with a void ticket to enter the theatre and take his seat, he would thereby waive the

right of revocation and be under obligation to allow the person so entering to remain unmolested; that the only conclusion to be drawn from the testimony was that the defendant did not intend at the door to revoke the ticket that was bought that night; that the person holding that ticket had the right to enter and enjoy the performance without humiliation or embarrassment, and if such person was led to believe by the negligence of the defendant that that ticket was revoked, and on account thereof left the theatre, such person would be entitled to actual damages resulting from any humiliation or embarrassment resulting therefrom; the question of punitive damages was eliminated; that the ticket purchased on September 4th, not having been used on that day, was void, as opposed to the reasonable regulation of the defendant; that the jury must decide which one of the plaintiffs was entitled to use the good ticket. The jury rendered a verdict in each case for the plaintiff for $500.00 actual damages, and from the judgments entered thereon the defendant has appealed.

The exceptions present the following questions for determination:

(1) Has the proprietor of a theatre the absolute right to refuse admission to one holding a valid ticket issued to him for value by the proprietor?

(2) Has the proprietor of a theatre the right to refuse admission to one holding a ticket issued to him for value, the recognition of which, however, will violate a reasonable regulation of the proprietor?

(3) Has the proprietor of a theatre the absolute right to eject one who has surrendered a valid ticket issued to him for value by the proprietor and taken his seat in the theatre?

(4) If a person should be wrongfully excluded or ejected from a theatre, in a peaceable and quite manner, without circumstances of insult or oppression, or invasion

of his personal rights causing personal injury, is he entitled to actual damages by reason of the consequent humiliation and emabrrassment?

(5) Is a person who claims damages for humiliation and embarrassment allowed to state the individual effect of the wrong complained of upon himself?

The first question: I concede that the great weight of authority, including the Supreme Court of the United States (in the case of *Marrone v. Club,* 227 U. S., 633; 33 Sup. Ct., 401; 57 L. Ed., 679; 43 L. R. A. [N. S.] 961, is in favor of the proposition that a ticket to a theatre is a revocable license, and that the proprietor has the right, without cause, to exclude the holder or eject him after he has been allowed to enter and take a seat. A thorough investigation and study of possibly 50 cases sustaining this doctrine has increased the shock experienced upon the suggestion of the proposition. I rise from it with the conviction that it does not appeal or conform to my common sense, conscience, or conception of the law, and, in the absence of controlling authority in this State, I decline to subscribe to it. My views are expressed in the case of *Hurst v. Picture Theatre* (Court of Appeals of England) Anno. Cas., 1916-D, 457, which practically overrules the case of *Wood v. Ledbitter,* 13 M. &. W., 838, decided in 1845, which appears to have been the "bellwether" of the innumerable errant flock. Counsel for defendant concedes that some of the cases have gone too far, but he contends that the right of revocation does exist prior to the entry of the patron into the theatre. I fail to see the distinction. If the ticket is a revocable license, it may be revoked at any time, even after the patron has entered and taken his seat. If it is not a revocable license, but a contract (one of the incidents of which naturally is that it shall not be revoked) the right to revoke cannot exist either before or after entry.

The second question: Although a *quasi* public institu-

tion, a theatre is the private property and business of the proprietor, and he has the right to adopt such reasonable regulations as in his judgment will be conducive to the orderly and profitable operation of his business. A regulation that a ticket must be used upon the day of its purchase or be void is such a reasonable regulation; and the purchaser at the time he buys it need not be informed of that condition. It was so held by the presiding Judge, without exception, and is at least the law of the case.

The third question: It is answered by what is said in reference to the first question.

The fourth question: The doctrine has been announced by this Court time and again that in the absence of personal injury the plaintiff cannot recover damages for mental distress, of which humiliation and embarrassment are examples. *Lewis v. Telegraph Co.,* 57 S. C. 325, 35 S. E. 556, where many cases from this State and other jurisdictions are cited; *Willis v. Telegraph Co.,* 69 S. C. 531, 48 S. E. 538, 104 Am. St. Rep. 828, 2 Ann. Cas. 52; *Hunter v. Telegraph Co.,* 90 S. C. 513, 73 S. E. 1017.

At most the wrong of the defendant grew out of a simple breach of contract. There were no circumstances of assault, abuse, insult, or discourtesy, other than the fixed purpose to assert a supposed right. The Circuit Judge eliminated the element of punitive damages based on a willful tort, saying:

"I charge you that there is no evidence of willfulness. There is therefore no punishment to measure out, no punitive damages."

The plaintiff's counsel stated:

"We agree with your Honor on the question of damages. We ask for actual damages, as I said to the jury in my argument."

That being so, the case falls under the well-established rule above stated.

In *Gosa v. Railroad Co.,* 67 S. C. 358, 45 S. E. 810 the Court held that

"When the action is for punitive damages, the jury has the right to take into consideration all the surrounding circumstances attending the injury in awarding. exemplary damages."

It was accordingly held that in an action by a mother for damages on account of an injury sustained by her in a collision at a crossing, due to the willful act of the defendant, the injury done to her child at the same time could be proved as a basis of mental distress to the mother.

In *Aaron v. Railroad Co.,* 68 S. C. 98, 46 S. E. 556, it was held that the plaintiff, having failed to establish his allegation of a willful tort, could not recover punitive damages for mental suffering.

In *Taylor v. Railroad Co.,* 78 S. C. 552, 59 S. E. 641, it is said:

"There is no allegation of physical or bodily injury. The law in this State does not allow recovery of damages for mental suffering in the absence of bodily injury, except under the mental anguish statute with reference to telegraph companies."

That case involved the breach of a common carrier's undertaking with reference to a lady passenger who was carried beyond her station by reason of the failure of the carrier to call it.

In *Black v. Railroad Co.,* 82 S. C. 478, 64 S. E. 418, it is said:

"It is contended that the Court erred in charging the jury that plaintiff, having received no personal injury, and none having been alleged in the complaint, could recover no damages for worry and mental anguish caused by the alleged delay. * * * The charge was in accordance with the common law enforced in this State, which does not allow

recovery for mental suffering in the absence of bodily injury."

This case also involved the duty of a common carrier to a lady passenger, who was required to leave a train which did not stop at her station and take a later train.

In *Norris v. Railroad Co.,* 84 S. C. 15, 65 S. E. 956, it is said:

"The law in this State does not allow recovery of damages for mental suffering in the absence of bodily injury, except under the mental anguish statutes with reference to telegraph companies."

This was also a case of a lady passenger. She claimed that there was a breach of the carrier's obligation to provide for her safety and reasonable comfort, of which it was assumed that there was some evidence, but it did not result in her bodily injury, and there were no circumstances showing willful wrong.

In *Stewart v. Telegraph Co.,* 93 S. C. 119, 76 S. E. 111, it is said:

"In actions for damages for tort, mental suffering is not an element of damages, in the absence of bodily injury."

In *Lipman v. Railroad Co.,* 108 S. C. 151, 93 S. E. 714, L. R. A. 1918A, 596, it was very properly held that a carrier which had accepted the plaintiff as a passenger was liable in damages for the mental suffering caused by unwarranted abuse of and insult to the passenger by the conductor.

I think that this question therefore should be answered in the negative. I am impressed by the conviction that the plaintiffs, instead of being greatly humiliated and embarrassed by the alleged expulsion, were quite willing to commercialize their wounded feelings. It is a sound principle that in case of a wrong done it is the duty of the injured party to minimize the damages as far as possible cr practicable. They were determined upon a lawsuit, and

so expressed themselves. Within a few minutes after their expulsion, according to the testimony of both of them, the manager apologized for the mistake, and offered to allow them to re-enter the theater upon the tickets that had been turned down; they declined the offer.

Fifth question: Assuming for the argument's sake, that the plaintiffs were entitled to actual damages, for the humiliation and embarrassment of being required to leave the theater, it is thoroughly settled by the decisions of this Court that the facts should be set forth to the jury, and that they should estimate the damages, uninfluenced by the plaintiff's statement of his individual personal feelings.

In *Willis v. Telegraph Co.*, 69 S. C. 535, 48 S. E. 540, 104 Am. St. Rep. 828, 2 Ann. Cas. 52, the Court said:

"The company is charged with the suffering which the failure to deliver the telegram may reasonably be expected to produce when its contents are considered, not the suffering due to peculiar temperament, but that of an ordinary human being. It is not intended by the statute that the hopeful should have small verdicts and the despondent large ones.

"The safe and just rule is to exclude the evidence of claimant's peculiar fears, apprehensions and conclusions, and leave it to the jury, after hearing all the facts, to say, as men of common sense, with knowledge and experience of ordinary human sensibility, what mental anguish or suffering, if any, would result under all the circumstances, and the amount that should be allowed for it."

The Court in reviewing the various cases refers to the language used by Chief Justice Shaw, in *Snell v. Snow,* 13 Metc. (Mass.) 278, 46 Am. Dec. 730, a slander case:

To hold otherwise "would be to make the defendant's liability depend * * * upon the misconception or morbid imagination of the person in whose hearing they were spoken."

And quoting and approving the language from *Bank v. Jeffries,* 73 Ala. 192:

"The plaintiff was permitted (over objection) to testify * * * that by the issue and levy of attachment he 'was much distressed and harassed in body and mind,' that he 'was almost crazy.' * * * Such testimony as this can be legal only on the theory that for wrongs identical in nature and degree, the man of delicate organisms and acute sensibilities is entitled to greater damages than one of a more stoical nature. We cannot agree to this. * * * Such suffering is not the subject of direct proof. It is an inference to be drawn by the jury from the manner and causelessness of the wrong. * * * Furthermore, such test might operate very unjustly. The loss of available means, and of commercial credit, might greatly distress one, while wounded pride, or impaired social standing, would equally oppress another."

The Court concludes with these words (69 S. C. 538, 48 S. E. 541, 104 Am. St. Rep. 828, 2 Ann. Cas. 52):

"The plaintiff's statement of his particular conclusions and apprehensions from failure to receive the telegram should have been excluded."

In the case of *Interstate Amusement Co. v. Martin,* 8 Ala. App. 481, 62 South. 404, the Court reversed a verdict against the theater in question on the ground that it was reversible error to permit plaintiff to answer questions as to whether the language embarrassed or humiliated him, since it is improper to admit evidence as to the effect of an occurrence upon one's mind or sensibilities.

The Willis case is reaffirmed in *Roberts v. Tel. Co.,* 73 S. C. 520, 53 S. E. 985, 114 Am. St. Rep. 100; *Doster v. Telegraph Co.,* 77 S. C. 56, 57 S. E. 671.

Another consideration moves me to favor a reversal of the judgments: Counsel for the defendant announced and requested the Judge to direct a verdict upon the further ground that there was no revocation, or attempted revo-

cation, of the valid ticket purchased on September 11th; the presiding Judge so charged the jury. If therefore there was no revocation of that ticket, and Mrs. Bouknight was in on that ticket, there was no compulsion on her to leave; her leaving was a purely voluntary act on her part. To place the liability of the defendant upon what she thought as to its revocation is a manifest injustice to the defendant.

The right of either party to recover is further complicated by the impossibility of determining which one was in the theatre upon the valid ticket and which upon the void ticket. Mrs. Bouknight testified that she was using the valid ticket. This is but the wildest speculation on her part. The husband had one ticket, and, having her along, found it necessary of course to buy another. He handed them both to the usher. How it can be affirmed which one was using the valid ticket seems to me an utter impossibility.

I only suggest, without intimating an opinion upon a point not argued, that there might exist an obligation upon an escort who is providing for two admissions that both of them be valid. The analogy might exist between that condition and that of a father with his minor son upon board of a train, who, not providing a proper ticket for his son, would be liable to ejection along with him. *Railroad Co. v. Orndorff,* 55 Ohio St. 589, 45 N. E. 447, 38 L. R. A. 140, 60 Am. St. Rep. 716.

For these reasons I think that verdicts for the defendant should have been directed; at least that the judgments should be reversed.

### On Rehearing

Per curiam. The petition is dismissed, as it fails to show prejudicial error, and the stay ordered is revoked.

MR. CHIEF JUSTICE GARY and MR. JUSTICES WATTS and FRASER concur.

MR. JUSTICE COTHRAN (dissenting) : I do not see how it is possible to resist the conclusion that the leading opinion completely ignores the eighth exception and favor a rehearing.